Connie Fern VAN EMRIK and Richard H. van Emrik, individually and as parents of Lane Astrid van Emrik and Kate Anna van Emrik, Plaintiffs–Appellants,

v.

CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES and Nancy Smith, and Marcia A. Allen, individually and as employees of Chemung County Department of Social Services, Defendants–Appellees.

No. 806, Docket 89–9005.

United States Court of Appeals, Second Circuit.

Argued Feb. 7, 1990.

Decided Aug. 13, 1990.

**864**

John C.T. Hayes, Watkins Glen, N.Y. (Connie Fern Miller, on the brief), for plaintiffs-appellants.

Kevin M. O'Shea, Elmira, N.Y. (John F. O'Mara, Weeden A. Wetmore, Davidson & O'Mara, Elmira, N.Y., on the brief), for defendants-appellees.

Before TIMBERS, NEWMAN, and ALTIMARI, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns the defense of qualified immunity in the context of state interference with parental custody rights. Connie and Richard van Emrik appeal from the September 6, 1989, judgment of the District Court for the Western District of New York (David G. Larimer, Judge) dismissing, on motion for summary judgment, their suit against the Chemung County Department of Social Services ("the Department") and two child protective caseworkers. We agree with Judge Larimer that no facts were shown creating any issue as to the County's liability and that the individual defendants were entitled to the defense of qualified immunity. We therefore affirm.

### Background

The following facts are not in dispute. The van Emriks have two daughters, Lane and Kate, who were, respectively, seven months and two years old at the time of the pertinent events. On May 13, 1986, upon the father's return home from work, the baby-sitter, in a departure from the normal routine, immediately took Lane upstairs and put her in her crib, where she fell asleep. The mother returned home shortly thereafter. When the infant awoke, the parents noted that she was not acting normally, and later that evening they noticed that one of her legs appeared "floppy." Mrs. van Emrik then took the child to the emergency room at a local hospital, where she was diagnosed as suffering from a spiral fracture of her right leg. The parents suspected that the baby-sitter had inflicted the injury.

The emergency room physician told Mrs. van Emrik that a "hot line" report (of

possible child abuse) would have to be made, a course of action the mother fully supported. The next day the report was transmitted to state welfare officials and relayed to the Chemung County Department of Social Services. The report stated that the parents had no explanation for the injury, but also indicated that the baby-sitter might have been responsible. In the parents' view, their lack of explanation meant they did not know the precise circumstances surrounding the injury, though they insist they at all times expressed the view that the baby-sitter bore responsibility. Upon receipt of the report, defendant-appellee Nancy Smith, a senior caseworker in the Department's Child Protective Unit, began an investigation. She interviewed the parents and had an investigator interview the baby-sitter. No explanation of the injury was provided. A physician expressed the opinion that the injury had not been caused by Lane's sister and that the nature of the injury was a "very suspicious" indication of child abuse. Another physician opined that the injury would require a significant amount of energy, though it could have occurred from an accidental fall.

The child was scheduled for discharge from the hospital the following day, May 15. A physician's report notes that "she will be discharged to her home with the social worker's blessing." Upon learning of the imminent discharge, Smith requested the attending physician to perform a series of long-bone x-rays. According to Smith's report, the doctor said that he did not want to do the series because of radiation and asked why the request was made. Smith replied that she wanted to know if there were other fractures that had gone undetected and had healed. The doctor stated, the report continues, that he "could agree" with this reasoning and ordered the x-rays for the following morning. The parents were not consulted about these x-rays, and their consent was not obtained. Their understanding was that some additional x-rays of the injured leg were needed to be sure that the fractured bone had been set properly.

Also on May 15, Smith consulted with her supervisor, defendant-appellee Marcia Allen. Both concluded that, with the cause of injury unascertained, the child could be in danger if returned home. After consulting with the county attorney and others, they decided to file a petition under section 1022 of the New York Family Court Act (McKinney 1983 & Supp.1990). Meanwhile a lawyer for the van Emriks had contacted the defendants and told them that he wished to be informed of any decision concerning removal of the child. The county attorney tried unsuccessfully to reach the parents' lawyer. Without alerting the parents, who were at the hospital, the defendants and the county attorney then visited the Family Court Judge, whose chambers are three blocks from the hospital. The Judge signed an order temporarily placing the child in the custody of the Department, but instructed the defendants to ask the parents to agree to a temporary placement of the child with the Department and to serve the order only if they refused. Upon their refusal, the order was served, and the child was taken to a foster home.

At the urging of the family's pediatrician, the child was returned to the hospital within a few hours, under an arrangement prohibiting discharge without the Department's consent. The Department continued its investigation, which ended without any finding of responsibility for the injury. The child was discharged to the custody of the parents on May 23.

## Discussion

■ The parties do not dispute that the appellants have some constitutional rights of both a substantive and procedural nature, affording them protection against arbitrary state action interfering with their parental custody. *See Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir.1977); *cf. Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (establishing "clear and convincing" standard of proof for permanent termination of parental custody). It is also undisputed that the individual appellees enjoy qualified immunity from liability for damages if at the time of the pertinent episode it was not clear

that the actions they took violated established constitutional rights, or if it was objectively reasonable for them to believe that their actions did not violate such rights as were then clearly established. *See Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987). Appellants challenge both the decision of the individual defendants in acting to remove their child from their custody and the manner of implementing that decision. We agree with Judge Larimer that with respect to both aspects of the challenged conduct, the individual defendants are entitled to the defense of qualified immunity.

Though a decision to remove a child from parental custody implicates the constitutional rights of the parents, it obliges protective services caseworkers to choose between difficult alternatives in the context of suspected child abuse. If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in not removing the child, they risk injury to the child and may be accused of infringing the child's rights.[1] It is precisely the function of qualified immunity to protect state officials in choosing between such alternatives, provided that there is an objectively reasonable basis for their decision, whichever way they make it. Such a basis existed in this case. The defendants were confronted with an infant who had suffered a broken leg, characterized by an attending physician as "very suspicious" of child abuse. Quick inquiry of the people possibly responsible, the parents and the baby-sitter, failed to discover how the injury was sustained. The defendants consulted with superiors, obtained a court order, and executed it only after the parents refused to permit a temporary interruption of their custody. The issue is not whether it was absolutely essential to remove the child or whether a more sensitive course might have been to leave the child hospitalized pending further investigation. The issue is whether it was objectively reasonable for the defendants to make the decision they made, and no rational jury could find that it was not.

Appellants also fault the manner in which the temporary removal was effected. They accuse the caseworkers of sins of commission and omission in what they told and failed to tell the parents and the Family Court Judge. For example, they point out that the Judge was not told that the reason why the parents had no explanation for the injury was because it occurred, according to their version, while the child was alone with the baby-sitter. Though it would have been more candid to have made the Judge aware of this circumstance, neither this omission nor appellants' other criticisms of the papers submitted to the Family Court Judge rise to the level of a constitutional violation. With one exception, discussed below, their complaints show no impairment of a constitutional right.

■ Nor can liability be predicated upon the individual defendants' failure to give the parents notice of the application to the Family Court Judge. The parents had elected to have an attorney contact the Department, and it is undisputed that the Department telephoned the attorney's offices before visiting the Judge. The attorney was on trial when the call came. Though it would have been preferable for the defendants to have alerted the parents, who were readily available and obviously vitally interested, there is no denial of constitutional right where the effort of state officials to give notice of an emergency hearing for a temporary transfer of custody is defeated because the attorney acting for the parents becomes unavailable and fails to make arrangements for relaying information to the parents in his absence.

■ The one aspect of the caseworkers' conduct that causes concern is the request for long-bone x-rays, made without the con-

---

1. Though the Supreme Court has ruled that the failure of state officials to remove a child who suffers abuse does not violate substantive due process, *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Court has left open the possibility that such inaction may violate procedural due process, *id.* at 1003 n. 2, and has also pointed out the possibility of liability under state law, *id.* at 1006–07.

sent of the parents. The caseworkers purported to act pursuant to N.Y. Soc. Serv. Law § 416 (McKinney 1983), which authorizes any person required to report cases of suspected child abuse to arrange for "photographs of the areas of trauma visible" and *"if medically indicated,* ... a radiological examination on the child." *Id.* (emphasis added). According to Smith's report, the x-rays she requested were not medically indicated. In fact, the attending physician initially opposed them because of concern about radiation. The x-rays were not sought to facilitate diagnosis or treatment, nor to assess the success of the surgery that had been performed. As she herself stated, Smith wanted long-bone x-rays to determine if there were signs of previous fractures elsewhere in the child's body that had gone undetected and had since healed. The purpose was not to provide medical treatment to the child, but to provide investigative assistance to the caseworker.

The fact that the ordering of the x-rays likely exceeded the scope of the pertinent state statute does not necessarily mean that a constitutional right was impaired. However, the constitutional liberty interest of parents in the "care, custody, and management of their child," *Santosky v. Kramer,* 455 U.S. at 753, 102 S.Ct. at 1394, though not "beyond limitation," *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944), includes a significant decision-making role concerning medical procedures sought to be undertaken by state authority upon their children. *See Parham v. J.R.,* 442 U.S. 584, 602, 99 S.Ct. 2493, 2504, 61 L.Ed.2d 101 (1979) ("parents generally 'have the right, coupled with the high duty' ... to recognize symptoms of illness and to seek and follow medical advice" (quoting *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925)); *Jacobson v. Massachusetts,* 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905). That interest assumes special significance when the procedures undertaken at the initiative of a state official serve primarily an investigative function; in such circumstances, Fourth Amendment and bodily integrity in-

terests of the child are implicated, *see Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966) (search warrant "ordinarily required" for "intrusions into the human body"), interests the parents are entitled to assert on the child's behalf. *Cf. Wisconsin v. Yoder,* 406 U.S. 205, 232, 92 S.Ct. 1526, 1541, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters, supra; Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). *Schmerber* upheld the taking of a blood sample as incident to a valid arrest for drunken driving, balancing various interests including the likely dissipation of the alcohol content if the blood analysis was delayed. In the instant case, there was no arrest, there is no claim that there was probable cause for an arrest, and there was no risk that the condition sought to be examined by the x-rays would change during the time required to obtain court authorization.

■ We believe the Constitution assures parents that, in the absence of parental consent, x-rays of their child may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined, upon notice to the parents and an opportunity to be heard, that grounds for such an examination exist and that the administration of the procedure is reasonable under all the circumstances. *Cf. United States v. Allen,* 337 F.Supp. 1041 (E.D.Pa.1972) (requiring search warrant for x-ray of criminal suspect); *State v. Mabon,* 648 S.W.2d 271 (Tenn.Crim.App.1982) (same); *see also United States v. Ek,* 676 F.2d 379, 382 (9th Cir.1982) (permitting x-ray incident to border detention only on "clear indication that suspect is concealing contraband"). Such notice and hearing will afford the judicial officer an opportunity to assess the evidence prompting the state official's request and to ascertain from the parents pertinent facts bearing on the appropriateness of the procedure. For example, inquiry might disclose that sufficiently thorough x-rays had recently been taken and were readily available for inspection or that the extent of radiation contemplated posed an unusual risk to the particular child.

However, the case law decided at the time these caseworkers acted to request the investigative x-rays had not clearly established a constitutional right to the intervention of a judicial officer in the context of medical procedures in aid of child abuse investigations. As a result, the defense of qualified immunity protects the individual defendants from damage liability for acting as they did. Clearly they did not take action of the sort that reasonable officials would have known at the time was unconstitutional. *Cf. Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

■ Appellants' claim against the Department fails, as Judge Larimer held, for lack of adequate allegations of any policy or custom of the county that contributed to a denial of constitutional rights. The decision to request the long-bone x-rays for investigative purposes was an *ad hoc* decision, not grounded in any policy of the Department.

Having rejected appellants' constitutional claims, Judge Larimer properly declined to exercise pendent jurisdiction over their state law claims, in effect, dismissing them without prejudice.

The judgment of the District Court is affirmed.