UNITED STATES of America,
Plaintiff,

v.

Calvin DYESS, Eric Dewayne Spencer,
and Michael Jason Bartram,
Defendants.

Nos. CR. 29900012–01, CR. 299–00012–
02, CR. 299–00012–10.

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 12, 2002.

Monica K. Schwartz, Assistant U.S. Attorney, Philip H. Wright, Assistant U.S. Attorney, Charleston, WV, for the United States.

John G. Hackney, Jr., Esq., Charleston, WV, for Defendant Calvin Dyess.

Thomas J. Gillooly, Esq., Charleston, WV, for Defendant Eric Dewayne Spencer.

Robert A. Ratliff, Esq., Roberts, Shields, Green, Landry & Ratliff, Mobile, AL, for Defendant Michael Jason Bartram.

### *MEMORANDUM OPINION AND DISQUALIFICATION ORDER*

HADEN, Chief Judge.

Pending is Defendants' motion to recuse or disqualify the Office of the United States Attorney (U.S. Attorney) for the Southern District of West Virginia or such of its members as the Court may deem appropriate. A hearing was held on the motion December 9, 2002. Present were the Defendants, in person, and by counsel, John G. Hackney, Jr., counsel for Dyess, Thomas J. Gillooley, counsel for Spencer, and Robert A. Ratliff, counsel for Bartram. The Government was represented by Assistant United States Attorney (AUSA) Philip H. Wright and AUSA Monica K. Schwartz. The Court took the matter under advisement and, having reviewed Defendants' arguments presented at the hearing and in written briefs, now GRANTS Defendants' motion to disqualify the Office of the United States Attorney for the Southern District of West Virginia.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1999, these Defendants pled guilty to various drug charges before this Court. Calvin Dyess pled guilty on April 17, 1999 to conspiracy to distribute cocaine base, cocaine, and marijuana, 21 U.S.C. § 846, and conspiracy to launder drug proceeds, 18 U.S.C. § 1956. Eric Spencer pled guilty on April 15, 1999 to conspiracy to distribute cocaine base, cocaine, and marijuana, 21 U.S.C. § 846. Michael Bartram pled guilty on April 22, 1999 to distribution of cocaine base, 21 U.S.C. § 841(a)(1).

Michael Bartram was sentenced on July 26, 1999. No testimony was presented at his sentencing hearing. The remaining Defendants were sentenced on August 27, 1999 following a two-day evidentiary hearing. The witnesses at that hearing included Rachel Ursala Dyess (Ursala), Ben Green (indicted separately), and Charleston police detectives who were DEA task force agents on this case, William (Billy) Hart and George Henderson. All defendants noticed direct appeals. These cases were consolidated for appeal.

The Government contends that it first became aware of alleged investigative misconduct in December 2001 when Ursala Dyess, with counsel, approached the U.S. Attorney's Office. Ursala is the ex-wife of Defendant Calvin Dyess. She was a co-defendant in this criminal action and pled guilty to money laundering conspiracy, cooperated with the Government, and turned over at least $298,005 in drug proceeds to the United States. Receiving lenient treatment, she was sentenced to probation. In July of 2001, Ursala married the Charleston Police Department detective/DEA Task Force agent Hart, who was the lead local investigator in the prosecution of Defendants, including Ursala. By October 2001, Ursala and Hart were involved in a bitter marriage breakup.

On April 29, 2002 the United States made the first of a series of disclosures pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), relating to all thirteen defendants in the original conspiracy.[1] Supplemental disclosures followed on May 28 and 30, July 17 and 30, and November 5, 2002. Among myriad other facts, the disclosures revealed that Ursala and Hart began a personal/sexual relationship in approximately February of 1999. She alleged Hart encouraged her to lie to the Court. Further, Ursala alleged she failed a polygraph examination in early February 1999 concerning whether she had retained any drug proceeds and Hart concealed the polygraph result from the U.S. Attorney's Office. Ursala alleged she provided $80,000 to Hart and his partner, George Henderson. According to Ursala, Hart, in Henderson's presence, allowed her to keep $20,000. On February 4, 1999 Hart tendered $41,630 to the United States.

Investigation later confirmed Ursala had been given a polygraph on February 2, 1999; the examiner concluded her answers

---

1. All Defendants named in the Superseding Indictment, handed down February 17, 1999, were: Calvin Douglas Dyess, Counts one, two, three, four, five, six, seven, eight, nine, eleven; Rachel Ursala Dyess, Count three; Eric Dewayne Spencer, Counts two, four; Luis A. Cortes, Count two; Alfonso Rodriguez, Count two; Ebrima Jawara, Count 2; Lori Nicole Cummings, Count four; Mike S. Meadows Count two; Simernon L. Rogers, Count two; Michael Jason Bartram Count two; Eddie Ray Dyess, Counts two, thirteen; Orange Dyess, Count two; Joey Lamont Pryor, Counts two, ten, twelve.

AUSA Monica K. Schwartz was the lead prosecutor in this case. Her immediate supervisor at that time was AUSA John Parr, now associated with the Office of the U.S. Attorney for the Northern District of West Virginia.

indicated deception. No report was requested by Hart and none was generated until December 11, 2001. Hart later admitted allowing Ursala and witness Ben Green to keep money. Detective George Henderson also admitted he and his partner Agent Hart allowed Ursala to keep drug proceeds.

On August 28, 2002 the Court of Appeals remanded the consolidated appeal of Calvin Dyess, Eric Spencer, Orange Dyess [2] and Michael Bartram. "In view of the Government's disclosure," our Court of Appeals directed remand to this Court "to conduct such further proceedings as it may deem appropriate." *United States v. Dyess,* Nos. 99–4566, 99–4665, 99–4666, 99–4667 (4th Cir. Aug. 28, 2002)(Remand Order). Defendants' motion to disqualify the U.S. Attorney's Office followed, based on Rule 3.7 of the West Virginia Rules of Professional Conduct and the potential appearance of impropriety.

## II. DISCUSSION

This case presents questions of ethical conduct and the appearance of impropriety in a disturbing factual scenario, which is unprecedented in this Court's experience. The lead AUSA who prosecuted this case also managed case agents and witnesses who allegedly (and by their own admissions) stole drug proceeds, suborned perjury, lied under oath, and tampered with witnesses. The questions whether disqualification is appropriate and, if so, who should be disqualified, raise novel ethical, legal and practical concerns.

Ethical conduct in this Court is governed by the local rules:

The Code of Professional Conduct of the American Bar Association, the Model Federal Rules of Disciplinary Enforcement as adopted by this court, and the

Code of Professional Conduct as adopted by the Supreme Court of Appeals of West Virginia provide the basic ethical considerations and disciplinary rules for the conduct of attorneys practicing in this court.

L.R. Gen. P. 3.01

Rule 3.7 of the Code of Professional Conduct of the American Bar Association (ABA) provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Rule 3.7, ABA Model Rules of Professional Conduct; Rule 3.7, W. Va. Rules of Professional Conduct (same). The Fourth Circuit holds that "[t]he roles of witness and advocate are fundamentally inconsistent and when ... a lawyer ought to testify as a witness for his client, he must as a rule withdraw from advocacy." *International Woodworkers of Am. v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1272 (4th Cir.1981)(citing Ethical Consideration (EC) 5–9). "Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." *Id.* (quoting EC 5–10). An actual conflict of interest exists when the attorney has independent information about facts in controversy relating to his client and would, therefore, be faced with the possibility of testifying. *See United States v. Urbana,* 770 F.Supp. 1552, 1559 (S.D.Fla.1991)(Inasmuch as the attorney

---

**2.** On April 28, 1999, the day his trial was scheduled to begin, Orange Dyess agreed to plead guilty to an information alleging viola-

tion of 21 U.S.C. § 856(a)(1), maintaining a crack house. Orange Dyess has not joined the instant motion.

"can offer testimony about material issues in the case, he is precluded from appearing as trial counsel.")

The rule forbidding a lawyer to act as both advocate and witness in the same proceeding acknowledges several important considerations. The most important is that the attorney-witness may not be a fully objective witness or may be perceived by the trier of fact as distorting the truth for the sake of his client. *United States v. Morris,* 714 F.2d 669 (7th Cir.1983). While the danger is greater when matters are tried to a jury, it does not disappear when the lawyer testifies in matters tried to the bench.

In its briefs and at the hearing on this matter, the Government disputed whether AUSA Schwartz would be required to testify at any stage of these proceedings. Additionally, the Government argued that, even if Schwartz's testimony were required, these post-plea proceedings are not a trial so the rule is inapposite. The United States contended that analysis of the rule by the Supreme Court of Appeals of West Virginia demonstrates its inapplicability to these circumstances.

The state court held that:

When an attorney is sought to be disqualified from representing his client because an opposing party desires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client.

*Smithson v. United States Fidelity & Guaranty Co.,* 186 W.Va. 195, 197, 411 S.E.2d 850, 852 (1991). Although the Court is not bound by the state court interpretation of this rule, the analysis provides a thoughtful and reasonable framework in which to consider the issue.

While the Government is correct this proceeding is not, and may never involve, a trial, nevertheless, under the Guidelines sentencing regime, the sentencing hearing following a guilty plea is the functional equivalent of a mini-trial on the sentencing issues alone. The outcome of those questions determines the duration of time for which the defendant will be deprived of his liberty and implicates defendants' constitutional procedural due process protections. As the commentary explains, the rationale for Rule 3.7 is:

Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation.

ABA Model Rules of Professional Conduct, cmt. 1, 2.

The Court is unwilling and unable to prejudge what motions Defendants may bring and what relief they may seek. Nevertheless, issues likely to arise include, generally, what the Government knew and when the Government knew it, about the alleged misconduct and improprieties of the Government's own agents, particularly investigative officers. To avoid *Brady* violations, the Government has a duty to learn of unfavorable evidence known to others acting on its behalf, including the police. *Kyles v. Whitley,* 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Whether a prosecutor succeeds or fails in that obligation, its responsibility for failing to disclose known evidence rising to a material level of importance is inescapable. *Id.* The knowledge of the police officers, United States' agents, is imputed to the Government. A prosecutor has a duty to disclose favorable evidence to a

defendant, regardless of whether the police failed to inform the prosecutors of the evidence. *Id.* In this case, the details of that duty and the time and place at which it failed (because some degree of failure is now obvious) seem likely to arise, at least in the context of the credibility and impeachability of several of the Government's main witnesses.

Ms. Schwartz, who managed the prosecution, directed the police agents, and made the Government's disclosures, appears to be the Government agent with the most personal knowledge of all facets of the problematic issues raised here. As such, it appears unavoidable that Schwartz will at some point necessarily be a witness.[3] In fact, it is likely at least some of the evidence cannot be obtained elsewhere. However, others in the U.S. Attorney's Office for this district also have worked with these officers on many drug investigations over an extended period of time. At the hearing, the Government acknowledged that the office had a particularly close working relationship with Officer Henderson. At some point before the Government's disclosures, Hart's personal relationship with Ursala became general knowledge, certainly when they were married in July 2001. Thus, other members of the office are potential witnesses.

The final prong of the *Smithson* test, applying Rule 3.7, inquires whether the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client. Schwartz responds that the U.S. Attorney does not object to her continuing to represent the Government in this criminal prosecution. The client of that office is not the U.S. Attorney, however, but the United States.

> The U.S. Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer[.]

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

The unique nature of the U.S. Attorney's representation highlights a second, and potentially greater problem this office faces in its continued prosecution of these Defendants. Unquestionably, testimony from the police officers, who are agents of the United States, and possible testimony from Schwartz and other AUSAs or office employees is potentially prejudicial both to the reputation of their office and that of the Government. In this regard, the interest of the U.S. Attorney's Office and that of the sovereign government may not be aligned because revelation of wrongdoing, which may be required in the service of truth and justice to these defendants, cannot help but cause reputational injury to the office.[4]

---

**3.** For example, during the hearing on this matter, Defendant Calvin Dyess alleged he had written to Schwartz before his guilty plea, informing her of the relationship between his wife Ursala and Agent Hart. Schwartz then told the Court she knew she had not heard from Dyess until the summer of 2001 because she was on an extended leave at that time and when she returned to the office on a weekend, her supervisor, John Parr, asked if she had seen the letter from Dyess. This is testimony, not advocacy.

**4.** The Court should emphasize that at this time there are no allegations of improprieties or misconduct by the U.S. Attorney's Office, in general, or by Ms. Schwartz, in particular. The Court's action is not predicated on such wrongdoing, or even the possibility of such wrongdoing. Not impropriety, but the poten-

This conflict implicates another rule of professional conduct, which provides:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own responsibilities to another client or to a third person, *or by the lawyer's own interests,* unless:
>
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> >
> > (2) the client consents after consultation[.]

Rule 1.7(b), ABA Model Rules of Professional Conduct (emphasis added); Rule 1.7(b), W. Va. Rules of Professional Conduct (same). The potential conflict between protecting the good name of the office and its agents while ensuring that the Government's interests in justice are fully and fairly represented is clear and unavoidable. Presumably this consideration underlies an earlier decision to recuse the office of the U.S. Attorney for the Southern District of West Virginia from investigation and potential criminal prosecution of the police officers involved. At the hearing on the instant motion, the Government revealed this recusal and further disclosed that the office for the Northern District of West Virginia has been appointed in its stead.

This conflict of interest highlights the Court's final and paramount concern, the potential for the appearance of impropriety. The Court's ultimate consideration must be public confidence in the administration of justice, that "justice must satisfy the appearance of justice." *United States v. Johnston,* 690 F.2d 638 (7th Cir.1982); *General Motors Corp. v. City of New York,* 501 F.2d 639, 649 (2d Cir.1974). As the Supreme Court stated, federal courts have an obligation to ensure "that legal proceedings appear fair to all who observe them."

*Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988).

The remand order from our Court of Appeals is stated in broad terms. The Court is charged to explore all happenings in the case to determine if Defendants' sentences are appropriate and legal. That exploration may require numerous witnesses to testify concerning both the investigation and prosecution. The drug crimes prosecuted here were of significant magnitude for this district. It would be mere speculation to limit prematurely the identification of those individuals to the principal prosecutor and her lead investigators, or to those individuals whose identities are known at this time as being directly involved in these matters.

At remand, this Court must determine if ethical or criminal breaches occurred that involved agents of the United States. The allegations involve the personal and sexual relationship of an agent of the United States with a key "prosecuting" witness who received lenient treatment as a Defendant when sentenced; alleged misallocation of substantial amounts of money; possible coerced testimony and perjury; and perhaps, other wrongdoings. Some personnel of the U.S. Attorney's Office may have direct knowledge of these events, and all are charged with imputable knowledge. The general public would be hard pressed to avoid suspecting impropriety. In a matter as serious as this, even its appearance must be avoided.

## III. CONCLUSION

With these considerations in mind, the Court:

1. **GRANTS** Defendants' motion. The Office of the U.S. Attorney for the Southern District of West Virginia is disqualified from further participation in the prosecu-

---

tial appearance of impropriety motivates the decision.

tion of all matters related to the Court of Appeals' remand order.

2. The Department of Justice is **DIRECTED** to appoint the appropriate official, personnel or another district office to assume prosecution of these matters.[5]

The Clerk is directed to send a copy of this Memorandum Opinion and Disqualification Order to counsel of record, to the Department of Justice, to the United States Marshal and to the Probation Office of the Court and publish it on the Court's website at http://www.wvsd.uscourts.gov.

**5.** The Court observes that AUSA Schwartz's immediate supervisor at the time of the alleged improprieties, John Parr, is now employed as an AUSA with the Office of the U.S. Attorney for the Northern District of West Virginia.