**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Jason BARTRAM,
Defendant–Appellant.**

No. 99–4566.

United States Court of Appeals,
Fourth Circuit.

Argued: Dec. 2, 2004.

Decided: April 29, 2005.

---

308

**ARGUED:** Robert Allen Ratliff, Shields, Ratliff, Green & Kern, Mobile, Alabama, for Appellant. Michael James Elston, Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Brian D. Miller, Special Attorney to the Attorney General, Kimberly R. Pedersen, Special Attorney to the Attorney General, Alexandria, Virginia, for Appellee.

Before WIDENER, NIEMEYER, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion. Judge NIEMEYER wrote a separate opinion concurring in part and concurring in the judgment. Judge GREGORY wrote a separate opinion concurring in the judgment.

**OPINION**

WIDENER, Circuit Judge:

I.

The defendant, Michael Jason Bartram, pleaded guilty to a one-count information charging distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). On appeal Bartram raises several issues chal-

lenging the judgment of the district court and the constitutionality of his sentence in the Southern District of West Virginia. For the reasons that follow, we affirm.

## II.

On February 17, 1999, the defendant and twelve others were charged in a thirteen count superseding indictment with various drug related offenses by a federal grand jury. The grand jury charged the defendant in Count Two of the thirteen-count superseding indictment, which was conspiracy to possess with intent to distribute cocaine, cocaine base and marijuana in violation of 21 U.S.C. § 846. On April 23, 1999, the United States filed an information charging Bartram with distributing "a quantity of cocaine base" in violation of 21 U.S.C. § 841(a)(1). Bartram entered into a plea agreement with the United States and, pursuant to that agreement, pleaded guilty to the charge in the information. The plea agreement correctly specified that 20 years of imprisonment was the maximum statutory sentence for the offense charged in the information, and the district court advised Bartram of the maximum penalty during the plea colloquy. The minimum statutory sentence was 10 years. 21 U.S.C. § 841(b)(1)(A)(iii). The district court held a sentencing hearing for the defendant on July 26, 1999. Although the defendant's pre-sentence report did not recommend it, the district court concluded that Bartram's base offense level was 31, having awarded him a three-level reduction from level 34 for acceptance of responsibility, and his criminal history placed him in criminal history category II. Thus, the applicable guideline range was 121–151 months of imprisonment; a fine of $15,000 to $1,000,000; and three years of supervised release. The district court imposed a sentence of 132 months of imprisonment, a $2,000 fine, and a three-year term of supervised release. The district

court also dismissed the count as to this defendant for a violation of 21 U.S.C. § 846 in the superseding indictment.

Although the defendant had initially objected to the conclusion in the pre-sentence investigation report that the defendant's relevant conduct included the distribution of over 150 grams of cocaine base, the defendant withdrew that objection at the beginning of the sentencing hearing. Also, Bartram's attorney admitted in open court that defendant distributed more than 150 grams of cocaine base. Given that admission and the defendant's withdrawal of the objection to criminal conduct, the United States did not offer any evidence with respect to drug quantity. The district court found that the defendant had accepted responsibility, reducing his offense level from 34 to 31.

The defendant filed a timely notice of appeal on August 5, 1999. This court consolidated the defendant's appeal with the appeals of three of his co-defendants. On August 28, 2002, while the consolidated appeals were yet pending, this court remanded the case to the district court in view of the government's disclosure of a relationship between its lead investigator and one of the defendant's co-defendants, and directed the district court to conduct such further proceedings as it may have deemed appropriate. On remand, the defendants moved to disqualify the United States Attorney's Office for the Southern District of West Virginia from further involvement in the prosecution of this case. The district court concluded that the lead prosecutor in the case would likely be a witness in any post-remand proceedings and that other prosecutors and employees in the office were also potential witnesses. *United States v. Dyess*, 231 F.Supp.2d 493, 497 (S.D.W.Va.2002). Although the dis-

trict court noted that there were no allegations of improprieties or misconduct by the United States Attorney's Office in general or the lead prosecutor in particular, the district court disqualified the United States Attorney's Office to avoid the appearance of impropriety. *Dyess*, 231 F.Supp.2d at 497, n. 4.

After new attorneys were appointed to appear on behalf of the United States, Bartram moved for a new trial, or, in the alternative, to withdraw his guilty plea. The district court denied the defendant's motion on December 18, 2003. On May 19, 2004, the United States moved to reconsider the consolidation of this appeal with the appeals of Bartram's co-defendants, and, on June 28, 2004, this court granted the motion.

### III.

Bartram argues several issues on appeal. First, he argues that the district court erred in sentencing him on the basis of 150 grams of cocaine base and in imposing a two thousand dollar fine. Further, Bartram claims 21 U.S.C. §§ 841 and 846 are unconstitutional in light of the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). He argues that these cases render constitutionally infirm all guideline upward adjustments and departures predicated on facts that were not charged in the indictment and found by a jury beyond a reasonable doubt. Finally, Bartram claims the only constitutional remedy is to apply only those guideline provisions consistent with the rule in *Blakely*, in light of the recent Supreme Court decision in *United States v. Booker*,

and resentence the defendant according to the amount of drugs for which he was initially charged, 1.8 grams of cocaine base. The information on which Bartram was tried charged only "a quantity of cocaine base." J.A. 145. No Fifth Amendment objection is made on that account.

■ We have been instructed in *Booker*, which governs this case, to "apply the review standards set forth in this opinion." *Booker*, Justice Breyer at 25. A remaining feature of the sentencing system is that "[t]he courts of appeals review sentencing decisions for unreasonableness." *Booker*, Justice Breyer at 22. "[I]n cases not involving a Sixth Amendment violation," such as this one, "whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine." *Booker*, Justice Breyer at 26. Following *Booker*, Justice Breyer at 26, we are of opinion that "resentencing is [not] warranted" and conclude it is sufficient "to review [the] sentence for unreasonableness." We conclude the sentencing decision of the district court in this case to be reasonable, as we set forth below.

### A.

■ Bartram first argues that the district court erred in sentencing him on the basis of 150 grams of cocaine base. Bartram argues that the information contained in the pre-sentence report did not support a finding of 150 grams of cocaine base. As the defendant admits in his brief, however, during the sentencing hearing, he withdrew his objection to drug quantity.[1] Further, the defendant's attorney admitted in open court that the defen-

---

1. Mr. Hively [defendant's attorney]: Your Honor, at this time Mr. Bartram is prepared to withdraw his objection to the relevant con- duct and accepts the relevant conduct as stated in the presentence report. (JA 179)

dant distributed "over 150 grams" of cocaine base.[2] The statement concluded: ". . . overall it still equals over 150 grams." (JA 179) Based on the defendant's plea of guilty, the district court sentenced him accordingly.

To arrive at the sentence of 11 years for distribution of over 150 grams of cocaine base, the district court consulted the Sentencing Guidelines. In so doing, the only error the district court committed was applying the guidelines under our pre-*Booker* mandatory case law under the Sentencing Guidelines, 18 U.S.C. § 3553(b)(1), as opposed to treating them as advisory, as required by *Booker*, Justice Breyer at 16–17. The district court carefully applied each section of the guidelines based on the defendant's admissions and the information in the presentence report to which fact-finding exception is not taken, other than as to the 150 grams of cocaine base.

The presentence report stated that the defendant pleaded guilty to a single-count information charging the defendant with knowingly and intentionally distributing a quantity of cocaine base under 21 U.S.C. § 841(a)(1). This offense is a Class C felony with a maximum punishment of 20 years, $1,000,000 fine, 3 years supervised release, and $100 criminal assessment. Bartram initially admitted to having sold 1.8 grams of cocaine base, but the relevant conduct to which he admitted during sentencing determined the amount to be at least 150 grams.[3]

Based on the 1998 edition of the Guidelines Manual, for offenses involving at least 150 grams of cocaine base, but less than 500 grams of cocaine base, the base offense level is 34. U.S.S.G. § 2D1.1(a)(3) and 2D1.1(c). Against the recommendation of the probation officer, the district court granted Bartram "a three point reduction in total offense level from 34 to 31" for acceptance of responsibility, which the government does not appeal. The district court also found that Bartram had two criminal history points, which put him in criminal history category II under U.S.S.G. § 5A, "expos[ing] him to a sentencing guideline range of 121 to 151 months." Thus, the maximum statutory sentence Bartram could receive was 20 years and the minimum was 10 years.

After the foregoing careful consideration, the district court sentenced him to 11 years. The district court examined and applied the Sentencing Guidelines just as *Booker* instructs. "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Booker*, Justice Breyer at 21–22. Based on the district court's careful deliberation in sentencing Bartram and because the district court sentenced him within the statutory guidelines, indeed near the low

---

**2.** Bartram argues in the alternative ineffective assistance of counsel for withdrawing his objection to drug quantity during the sentencing hearing. We have previously held that " 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on appeal, unless the record conclusively shows ineffective assistance.' " *United States v. King*, 119 F.3d 290, 295 (4th Cir.1997) quoting *United States v. Williams*, 977 F.2d 866, 871 (4th Cir.1992). Because the record does not conclusively show that Bartram's trial counsel was ineffec-

tive in withdrawing the defendant's objection to drug quantity, we reject this claim.

**3.** This figure is based on Bartram's wife's initial report to the police where she indicated that she had seen the defendant with $30,000 to $40,000 in drug proceeds. The government's position was that, assuming the value of one gram of cocaine base is $200, the case would convert to at least 150 grams of cocaine base to equal the lower amount of $30,000 in drug sales.

end, we are of opinion the sentence of 11 years is reasonable. And we so hold.

## B.

■ Next, Bartram argues that the district court erred in imposing a two thousand dollar fine, even thought it was well below the sentencing guidelines minimum of $15,000. He claims that the district court did not make a sufficient finding that Bartram had the ability to pay a fine in any event.

The maximum statutory fine is $1,000,000, pursuant to 21 U.S.C. § 841(b)(1)(C). A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013. According to the presentence report, under the guideline provisions, the fine range for a level 34 offense is a minimum of $17,500, pursuant to U.S.S.G. § 5E1.2(c)(3), and a maximum of $1,000,000, pursuant to U.S.S.G. § 5E1.2(c)(4). The fine range determined by the district court for the fine was $15,000 to $1,000,000. The district court imposed the fine below the guideline range because of inability to pay. At sentencing the district court stated, "I impose a fine below the guideline at 2 thousand dollars, believing the defendant can satisfy the fine during the time he's incarcerated from the inmate financial responsibility program." (JA 182) Based on the district court's careful examination of the guidelines and the defendant's ability to pay, we are of opinion and decide the fine of two thousand dollars to be reasonable.[4] Bartram does not point out any error in the district court's finding that he might satisfy the fine while in prison. So that finding of the district court is reasonable.

In arriving at our conclusion, both as to the fine and the sentence of imprisonment, we have considered the pre-sentence report, the transcript of the sentencing hearing, and the entire record in this case. With *Booker*, Justice Breyer at 25, we do not "believe that every appeal will lead to a new sentencing hearing." And this is such a case.

## C.

■ The purpose of the Sentencing Guidelines is to provide uniformity in sentencing in all parts of the country but to preserve flexibility when required in unusual cases. One feature of the system was that in certain instances the courts of appeals were to review the judgments of the district courts for unreasonableness. This review for unreasonableness is one of the "features of the remaining system, while not the system Congress enacted, [that] nonetheless continue to move sentencing in Congress' preferred direction." *Booker*, Justice Breyer at 22.

Reasonableness appears three times in the statute establishing review of a sentence under the Sentencing Guidelines, 18 U.S.C. § 3742. The first instance, § 3742(e), has been excised by *Booker*, so it has no application to this case. *Booker*, Justice Breyer at 16. The second and third mentions are in § 3742(f)(2), which was not excised. The first (f)(2) application is when the sentence is "outside the applicable guideline range" and the "departure" is "to an unreasonable degree." The second (f)(2) application is when "there is no applicable sentencing guideline" for the offense and the sentence imposed "is plainly unreasonable." Neither of the § 3742(f) instances have any application here, for the sentence is within the

---

**4.** Bartram also agreed in the plea agreement not to seek appellate review of any fine imposed. Because we find the imposed fine to have been reasonable, we need not consider the issue of waiver.

guidelines range and there is an applicable sentencing guideline.

If we tie our review of whether or not the sentence of the district court is reasonable to the wording of the statute, as just demonstrated, it is severely limited and would have only rare application in a case disposed of based upon a plea of guilty, which is the disposition accorded in the ordinary criminal case. In this circuit, more than 94% of the criminal convictions are as a result of guilty pleas, and more than 76% of all criminal cases are disposed of on guilty pleas. When the Court, in the *Booker* case, vacated the obligatory requirement from the standards for guidelines sentencing and substituted therefor the requirement that the sentencing guidelines were yet permissive, it enacted a huge change in criminal procedure, and I think it did not intend to restrict its requirement of reasonableness to the statutory requirements of the guidelines in the two instances mentioned above. Rather, I think the Court imposed the reasonable requirement to go with the permissive requirement imposed at the same time. I think the Court required the courts of appeals to review the actions taken by the district courts in sentencing to be reviewed under the standards of the system outlined in *Booker* and, if its acts were reasonable, to affirm the sentence of the district court. I would define reasonable under ordinary English usage as: being in agreement with right thinking or right judgment. *Webster's Dictionary, 3rd,* p. 1892.

In this connection, the Judge Niemeyer's concurring opinion is based on its construction of the *White* case, which is that the defendant had not carried "the burden of showing that the error [of using obligatory Guidelines] affected his substantial rights." 405 F.3d at 211. Whatever the burden may have been in *White*, in this case, the defendant's statutory mandatory

minimum sentence was 10 years, and his statutory maximum sentence was 20 years. The defendant was sentenced to 11 years, one year more than the minimum. So the defendant received an additional year in prison and his substantial rights were thus affected by reason of the additional year. The sentence the defendant might have received under the sentencing system outlined in *Booker* is not the issue at this stage of the analysis. The issue is whether the addition of one year to Bartram's sentence is a substantial right. I think that it is.

That being true, I think we may judge whether or not the action of the district court in adding the year to Bartram's sentence was reasonable. In my opinion, it was. The district court considered the guidelines and sentenced within the guidelines range. See *Booker,* Justice Breyer, p. 21–22. The sentence imposed was near the low end of the statutory range and was at the lower end of the Guidelines range. Nothing in the record shows that the district court considered any improper factor in sentencing or that any action of the district court was unreasonable.

### D.

The defendant next contends that 21 U.S.C. § 841 is unconstitutional in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We concluded in *United States v. McAllister,* 272 F.3d 228, 230 (4th Cir.2001) that

Section 841 simply defines a crime and assigns penalty ranges depending upon particular characteristics of the crime. Nothing in the statute purports to prescribe a process by which the elements of the crime and other relevant facts must be determined. Accordingly, nothing in § 841 conflicts with the Apprendi rule, which governs that process only. We therefore reject McAllister's argu-

ment and join the Fifth, Sixth, Seventh, and Tenth Circuits in holding that § 841 is not facially unconstitutional.

272 F.3d at 232 (internal citations omitted). Therefore, we conclude that the defendant's contention is without merit.

### E.

■ Finally, Bartram claims that *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), renders constitutionally infirm all guideline upward adjustments and departures predicated on facts that were not charged in the indictment and found by a jury beyond a reasonable doubt. We find no merit in his argument.[5]

■ The defendant in this case waived his Sixth Amendment rights when he consented to the plea agreement. "When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). As the Court has noted:

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers.

*Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (internal citations omitted). Further, "the Constitution insists ... that the defendant enter a guilty plea that is 'voluntary' and that

the defendant must make related waivers 'knowingly,' intelligently, [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629, 122 S.Ct. 2450 (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

■ A plea of guilty submits the defendant to fact finding by the judge, rather than the jury. The Judiciary Act of 1789, Section 11, and later amendments, bestows on the circuit and district courts[6] "exclusive cognizance of all crimes and offences cognizable under the authority of the United States." See also Judiciary Act of 1789, Sections 9, 17, and 33 and *Kent's Commentaries*, 3rd ed., 1836, p. 301–06 for explanation. For over 200 years, the trial courts have had jurisdiction to fix sentences, except in peculiar circumstances such as the present death penalty statute. Certainly this includes the authority for the judge to find facts unless otherwise prohibited. *Booker* has not changed that.

Here, the district court thoroughly questioned Bartram regarding the rights he waived. Bartram answered in the affirmative each question, demonstrating that his understanding of the plea agreement was knowing and voluntary. The district court did not err in its fact finding because the facts were based on the defendant's own admissions. Therefore, we are of opinion and hold the defendant's argument under *Blakely* to be without merit.

### IV.

Because there was no Sixth Amendment violation in this case, all facts being admitted under the guilty plea or expressly in open court, the real effect of *Booker* on

---

5. The defendant has not pointed out in this appeal or otherwise that the computation or application of the district court was unreasonable. As stated above, it is the reasonableness

of the district court's sentencing decision which we review under *Booker*.

6. Those circuit courts were also trial courts.

this case is whether· the district court's addition of one year to the statutory minimum of 10 years to Bartram's sentence was reasonable. *Booker,* Justice Breyer at 26. We conclude that it was. We also conclude the imposed fine to be reasonable. Thus, we find no reversible error in the judgment of district court.

Accordingly, the judgment of the district court is

*AFFIRMED.*

NIEMEYER, Circuit Judge, concurring in part and concurring in the judgment:

I am pleased to concur in most of what Judge Widener has written, and I concur in the judgment. My only reservation relates to the standard that we must apply in reviewing Bartram's sentence.

As Judge Widener points out, Bartram pleaded guilty, and during his sentencing hearing, he admitted to participation in a conspiracy that trafficked in at least 150 grams of crack cocaine. Bartram's counsel stated at the hearing that Bartram disputed the full extent of the drug amounts attributed to him by witnesses— "there might have been less of—fewer times or more frequent times with lesser amounts of drugs than the amount that Mr. Dixon stated"—but Bartram acknowledged that "overall it still equals over 150 grams." Based on this amount, Bartram was sentenced to 132 months' imprisonment. Because Bartram admitted the drug amount, he did not and could not claim a Sixth Amendment violation in not having had a jury determine that fact. Nor did he object to being sentenced under a mandatory Guidelines scheme.

On appeal, Bartram nonetheless challenges his sentence under *United States v. Booker,* ―― U.S. ――, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), contending that the district court erred by treating the Sentencing Guidelines as a mandatory system for sentencing purposes. Both Judge Widener and I agree that this was error, albeit not a Sixth Amendment error. We depart, however, on the analysis that follows the finding of error. Judge Widener suggests that by reason of *Booker* we review the sentence imposed for "reasonableness." *Supra* at 310. In contrast, I respectfully. suggest, likewise by reason of *Booker,* that we apply the plain-error doctrine, under which Bartram carries the burden of proof of establishing that the sentencing error affected his substantial rights. Because Bartram did not carry this burden, I would conclude that under Federal Rule of Criminal Procedure 52(b), we cannot correct the error. *See United States v. Cotton,* 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

In *Booker,* the Supreme Court held that the mandatory nature of the Sentencing Guidelines implicated the Sixth Amendment by imposing sentence enhancements based on the sentencing judge's determination of facts not admitted by the defendant nor proved to a jury beyond a reasonable doubt. *See* 125 S.Ct. at 746, 756. The Court resolved the problem by invalidating two provisions of the Sentencing Reform Act of 1984 that made the Sentencing Guidelines mandatory, thus permitting the remainder of the Sentencing Guidelines to operate "in a manner consistent with congressional intent." *Id.; see also id.* at 756–57. As the Court explained,

> [i]f the guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.

*Id.* at 750. Even with this holding, however, a sentencing court remains under an obligation *to consider* the Guidelines' ranges, *id.* at 757, but now it is permitted "to tailor the sentence in light of other statutory concerns" identified in 18 U.S.C. § 3553(a). *Id.; see also id.* at 767 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing").

With respect to appellate review, the *Booker* Court invalidated 18 U.S.C. § 3742(e) because that section established a standard of review that was linked to the mandatory nature of the Sentencing Guidelines. 125 S.Ct. at 765. To fill the gap created by the invalidation of § 3742(e), the Court adopted an appellate review standard of "reasonableness," finding that this standard was implied in the statutory framework that it left standing. *Id.* at 766. The Court concluded that the adoption of the reasonableness standard for reviewing sentences imposed under the non-mandatory scheme most closely adhered to congressional intent. *Id.* at 767. The Court noted that the reasonable-ness standard thus should govern review of any resentencings imposed by reason of the *Booker* holding. *Id.* at 769. But the court also observed that its holding would not require resentencing in all cases: "[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." *Id.*

Because there was no Sixth Amendment violation in this case, our holding in *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005), does not require resentencing. Rather, our holding in *United States v. White*, 405 F.3d 208 (4th Cir.2005), is the relevant precedent. In *White*, the defendant's sentence was based entirely on facts found by the jury and therefore no Sixth Amendment violation occurred. *See* 405 F.3d at 215. Nonetheless, we found, as we do here, that an error in sentencing occurred because the defendant was sentenced under a mandatory system. *See id.* ("Thus, even in the absence of a Sixth Amendment violation, the imposition of a sentence under the former mandatory guidelines regime rather than under the advisory regime outlined in *Booker* is error"). As such, we reviewed that error under the plain-error test and imposed on the defendant the burden of showing that the error affected his substantial rights. *See id.* at 223; Fed.R.Crim.P. 52(b); *United States v. Olano*, 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Williams*, 81 F.3d 1321, 1326 (4th Cir.1996). Because the defendant failed to carry his burden, we concluded in *White* that we could not correct the error on appeal. *See White* at 224; *see also Cotton*, 535 U.S. at 631, 122 S.Ct. 1781.

In this case, Bartram likewise did not carry his burden of demonstrating that the sentence imposed under a mandatory sentencing scheme affected his substantial rights. Moreover, Judge Widener's review of the sentence under a standard of reasonableness clearly demonstrates why Bartram could not sustain such a burden. Applying the plain-error test authorized in *Booker* for this circumstance, I thus reach the same result reached by Judge Widener, albeit under a different analysis. Accordingly, I concur in our affirmance.

GREGORY, Circuit Judge, concurring in the judgment:

I concur in the judgment only.