GREGORY, Circuit Judge,
dissenting as to Part III:
When we decided this case in 2007 on direct appeal, the Supreme Court had made clear that any fact increasing the maximum penalty for a crime must be *366 charged in the indictment. United States v. Cotton, 535 U.S. 625, 627,122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). We consider this part of the constitutional test under Apprendi. United States v. Promise, 255 F.3d 150, 156-57 (4th Cir.2001) (en banc). In his argument before this Court on direct appeal, Dyess contended there was Apprendi error because the indictment failed to allege the drug quantity that increased his maximum sentence to life imprisonment. On direct appeal, we did not discuss nor decide whether the indictment itself was defective under Apprendi. United States v. Dyess, 478 F.3d 224 (4th Cir.2007). The majority insists today that our muteness was in fact a decision sub silentio against Dyess on his Apprendi argument. I certainly agree with the majority that “a criminal defendant cannot ‘recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal].’ ” Ante 360 (quoting Boeck-enhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976)) (emphasis added). However, we did not “fully consider” Dyess’s Apprendi argument.[1] We conducted an analysis of Dyess’s argument under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a progeny of Apprendi. See Dyess, 478 F.3d at 240. But, beyond noting that Dyess raised an Apprendi challenge, we did not address his straightforward argument that the indictment violated Appren-di for failing to allege a drug quantity.
The omission is particularly odd given that Judge Haden recognized the viability of Dyess’s argument. When we first remanded this case for further proceedings after the revelations of government misconduct, Judge Haden explained that “[b]ecause the superseding indictment in these cases did not state a drug quantity, at any resentencing this Court is limited to the twenty-year statutory maximum of § 841(b)(1)(C).” United States v. Dyess, 293 F.Supp.2d 675, 693 (S.D.W.Va.2003). I would find that our silence on the matter in such an extraordinary case was an oversight that permits us to proceed with a full analysis on habeas review.
Even though the majority holds that Dyess cannot raise his Apprendi claim in his habeas petition, it offers an analysis of the merits of the claim. That analysis begins with the assertion that we should apply plain error review because “Dyess waited until the remand from this court to raise the issue.... ” Ante 361. The majority treats this case as if it was a run-of-the-mill drug prosecution, giving insufficient weight to misconduct by the lead investigator and key witness for the prosecution. Our remand in response to revelations of this pervasive misconduct amounted to pressing a reset button — it thrust the case back into a pre-sentencing posture. Because Dyess raised his Apprendi argument with particularity while the case was in this pre-sentencing posture, we are obliged to apply the harmless error standard of review. Fed.R.Crim.P. 52(a); United States v. Robinson, 460 F.3d 550, 557 (4th Cir.2006).
Under the harmless error standard, a defendant is “entitled to relief if the error has affected his substantial rights.” United States v. Rodriguez, 433 F.3d 411, 416 *367 (4th Cir.2006). Significantly, under harmless error review, the government bears the burden of establishing that the error did not affect the defendant’s substantial rights. Id. Because Apprendi error is constitutional in nature, the government must establish that it was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); United States v. Mac-kins, 315 F.3d 399, 405 (4th Cir.2003) (applying the Chapman burden to Apprendi error).
When a sentence violates Apprendi because the underlying indictment fails to allege drug quantities sufficient to raise the maximum sentence, a defendant’s substantial rights are violated. Promise, 255 F.3d at 160. Here, the indictment did not allege a drug quantity. As Judge Haden indicated, Dyess’s maximum sentence should therefore have been twenty years, not life.
Because the government assumes that plain error review should apply, it makes no explicit attempt on appeal to carry its high burden of proving that the error was harmless beyond a reasonable doubt. However, the government argues that Dyess’s admissions in his plea agreement offer adequate support for his life sentence. Normally, a defendant’s admission of requisite drug quantities in a plea agreement cures Apprendi error in the indictment. See, e.g., United States v. Flagg, 481 F.3d 946, 950 (7th Cir.2007); United States v. Silva, 247 F.3d 1051, 1060 (9th Cir.2001). But, once again, this is far from being a normal case. Judge Haden, who had been on the bench for some thirty-four years before he passed away, observed upon remand that “[t]his case presents questions of ethical conduct and the appearance of impropriety ... unprecedented in this Court’s experience. The lead AUSA who prosecuted this case also managed case agents and witnesses who allegedly (and by their own admissions) stole drug proceeds, suborned perjury, lied under oath, and tampered with witnesses.” United States v. Dyess, 231 F.Supp.2d 493, 495 (S.D.W.Va.2002). The lead investigator made a full-fledged and successful effort to woo Dyess’s wife, Ur-sala Rader, even marrying her after Dyess was sentenced. J.A. 624. He literally crafted exhibits to illustrate drug quantity that Rader and he referred to while giving testimony at Dyess’s sentencing hearing. J.A. 621-23.
After learning of the lead investigator’s misconduct, we remanded the case for further proceedings. J.A. 508. Rather than testify at an evidentiary hearing designed to gauge the impact his misconduct had on the evidence, the lead investigator claimed his Fifth Amendment right to remain silent. Amazingly, it appears the government did not compel his testimony by providing immunity. Nor did the government compel testimony after he entered a guilty plea to the charge against him — misappropriation of government funds of $1,000 or less.[2] As a result, we have never truly learned the extent to which his misconduct tainted the evidence against Dyess.
Given that Dyess’s admissions took place in the context of rampant government wrongdoing, they should not prevent us from noticing Apprendi error. The fairness of a plea goes well beyond a question of guilt or innocence. See Stephanos Bibas, Regulating the Plea-Bargaining Market: From Caveat Emptor to Consumer Protection, 99 Cal. L.Rev. 1117, 1139-40 (2011). When a defendant makes a decision to plea, he must weigh the “advantages and disadvantages of a plea agreement” against other possible scenarios. See Padilla v. Kentucky, 559 U.S. 356, 130 *368 S.Ct. 1473, 1484, 176 L.Ed.2d 284 (2010). Here, the appearance of advantages and disadvantages was warped by rife government misconduct. As such, Dyess’s admission to drug quantity should not be dispos-itive in our Apprendi analysis.
Even if plain error applies to this case, as the majority contends, Cotton does not control the outcome. The majority correctly explains that in Cotton, the Supreme Court declined to notice plain error under the fourth prong of the test put forward in United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), because evidence of drug quantity was “overwhelming,” and “essentially uncontro-verted.” Ante 361 (quoting Cotton, 535 U.S. at 633, 122 S.Ct. 1781). Ultimately, the Cotton Court found that while there may have been plain Apprendi error, there was “no basis for concluding that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.” Cotton, 535 U.S. at 632-33, 122 S.Ct. 1781.
Unlike in Cotton, the pervasive nature of the misconduct committed by the government in this case has discredited a substantial amount of the evidence against Dyess. For instance, Rader admitted that she lied when she testified that she created the demonstrative exhibits illustrating the quantity of drugs she had observed Dyess handle. See J.A. 89-94, 621-24. As mentioned above, the lead investigator created those exhibits. J.A. 621. He then coached Rader on how to testify about the exhibits, and became angry and abusive when she told him she could not remember or did not know how much drugs she had seen. J.A. 623-24.
While we may have affirmed the district court’s finding that sufficient untainted evidence remained to sustain the conviction, it is undeniable that government misconduct in this case severely weakened the evidence against Dyess. The remaining untainted evidence is not “overwhelming” and “essentially uncontroverted.” See Cotton, 535 U.S. at 633, 122 S.Ct. 1781. Further, it is hypocrisy of the first order for the government to proclaim that we should not notice plain error because there has been no damage to the “fairness, integrity or public reputation of judicial proceedings.” See id. The lead investigator’s behavior and misconduct undermined the judicial proceedings in this case. The best way for the prosecution to repair that damage would have been to concede to re-sentencing in a conciliatory effort to condemn this mess to history. Instead, the government charges headlong towards securing a life sentence under these troubling circumstances. I cannot condone this. I respectfully dissent.

. Of course, it is true that a court need not explicitly address each and every argument to decide and dispense of that argument. See Malbon v. Penn. Millers Mut. Ins. Co., 636 F.2d 936, 939 n. 8 (4th Cir.1980) (explaining that it is not "absolutely necessary” that a court specifically recite and discuss each argument advanced by the parties). However, there is nothing that requires that we interpret a court's silence on an argument as a decision rejecting the argument on its merits.

. At oral argument, the government was unable to provide any clarity regarding the prosecution of the lead investigator other than that he pled guilty to this charge.