STATE OF NORTH CAROLINA v. HASEEN HERMAN EVERETTE

No. COA03-858

(Filed 2 August 2005)

**1. Firearms and Other Weapons— firing into occupied property—knowledge that closed restaurant was occupied**

A defendant charged with firing into an occupied building had reasonable grounds to believe that the building was occupied at the time of the shooting, and the trial court did not err by denying his motion to dismiss. Defendant was shooting at a police officer in the street, the building was a restaurant closed for the night but in a busy area with other businesses remaining open, the owner was still inside, and it is significant that some light was emanating from the restaurant.

**2. Sentencing— aggravating factors—allegation not required**

It was not necessary to allege aggravating factors for assault and other crimes in the indictment.

**3. Sentencing— aggravating factors—*Blakely* error—jury finding required**

Defendant's Sixth Amendment right to a jury trial was violated where the court unilaterally found aggravating factors without submitting them to the jury.

**4. Sentencing— aggravating factors—right to jury determination—pending cases**

A defendant who did not raise the issue at trial did not waive appellate review of whether a jury should have determined his aggravating factors where his case was pending on direct review when the *Blakely* and *Allen* cases were decided.

**5. Sentencing— stipulation to aggravating factor—unaware of right to jury determination—not a knowing and intelligent waiver**

Defendant's stipulation to an aggravating factor was not knowing and intelligent and did not result in a waiver of his right to have the jury determine aggravating factors, because the cases establishing that right had not yet been decided.

**6. Sentencing— aggravating factors—right to jury determination—harmless error rule not applicable**

The harmless error rule does not apply to sentencing errors which violate a defendant's Sixth Amendment right to a jury trial under *Blakely*.

**7. Sentencing— *Blakely* error—remand for resentencing**

Although defendant argued that he could be resentenced after a *Blakely* error at no greater than the mitigated range since a mitigating factor was properly found, the proper procedure when appellate review reveals a *Blakely* error is simply to remand for resentencing.

**8. Sentencing— weight of aggravating and mitigating factors—discretion of court.**

The trial court did not abuse its discretion by finding that each aggravating factor alone outweighed the mitigating factor.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal by defendant from judgments dated 20 February 2003 by Judge Jerry R. Tillett in Superior Court, Pitt County. Heard in the Court of Appeals 21 April 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel S. Johnson, for the State.*

*Richard E. Jester, for defendant-appellant.*

McGEE, Judge.

Haseen Herman Everette (defendant) was convicted on 20 February 2003 of two counts of assault with a deadly weapon inflicting serious injury, in violation of N.C. Gen. Stat. § 14-32(b); assault with a firearm on a law enforcement officer, in violation of N.C. Gen. Stat. § 14-34.5; and discharging a firearm into occupied property, in

violation of N.C. Gen. Stat. § 14-34.1. The trial court entered judgment and found that defendant had a prior record level II. The trial court sentenced defendant to a minimum term of thirty-six months and a maximum term of fifty-three months in prison for each of the three charges, the terms to run consecutively. Defendant appeals.

The State's evidence tended to show that Officer Charles Savage (Officer Savage) of the Greenville Police Department was off duty, but was working as a security guard at a downtown Greenville store from 10:30 p.m. on 3 November 2001 until 2:30 a.m. on 4 November 2001. He was wearing his police uniform at the time. Officer Savage testified that during his shift, he told defendant to leave the store parking lot on four occasions. On his way home after his shift ended, Officer Savage saw girls fighting in the street near a restaurant. Officer Savage recognized three of the girls as having been with defendant earlier in the evening. Officer Savage broke up the fight, and as he dispersed the crowd, Officer Savage saw defendant standing a couple of feet from him. Officer Savage heard defendant say three times, "F—— the police." Officer Savage testified that he told defendant that defendant needed to " 'shut [his] mouth and disappear or [defendant would be] going to jail.' " Defendant started walking across the street and was escorted by another officer. Shortly thereafter, Officer Savage heard gunshots and saw smoke in the air that appeared to be from the gunshots.

Officer William Allen Holland (Officer Holland) of the Greenville Police Department was on duty around 2:30 a.m. on 4 November 2001. He went to assist Officer Savage in breaking up the fight in front of the restaurant. When Officer Holland arrived at the scene, he saw defendant being held back by an off-duty detention officer. Officer Holland took defendant from the detention officer and told defendant to leave. Officer Holland walked with defendant across the street. A black vehicle pulled up and defendant got into the front seat. The vehicle departed and as Officer Holland walked across the street, he heard gunfire. Officer Holland testified that he saw defendant "hanging out of the top of the sunroof of that vehicle shooting" in the direction of Officer Holland. Officer Holland chased the vehicle on foot. Officer Holland testified that "bullets [were] . . . impacting the wall on the side of Evans Street" and that he could "hear glass or something[.]" Officer Holland eventually lost sight of the vehicle.

Sergeant John Curry (Sergeant Curry) of the Greenville Police Department testified that he also responded to the fight near the

restaurant on 4 November 2001. Sergeant Curry helped disperse the crowd and he saw Officer Holland walking a man across the street. Soon after, Sergeant Curry heard gunshots and saw the same man who had been walking with Officer Holland standing up through the sunroof of a vehicle firing shots.

Officer Keith Knox (Officer Knox) of the Greenville Police Department also responded to the fight. He helped disperse the crowd and saw defendant being escorted across the street by Officer Holland. Officer Knox heard shots being fired and he saw that the shots were coming from an individual who was standing through the sunroof of a dark-colored vehicle. Officer Knox could not identify the person but could tell that the person was wearing a burgundy shirt. Officer Knox also testified that defendant was wearing a burgundy shirt. Officer Knox found seven shell casings at the scene.

Officer J.P. Valevich (Officer Valevich) of the Greenville Police Department testified about the differences between revolvers and semi-automatic weapons. He stated that revolvers generally fire only five or six rounds and that shell casings do not discharge automatically. In contrast, a semi-automatic weapon discharges its spent shell casings each time it is fired.

Officer Michael Ross (Officer Ross) of the Greenville Police Department testified that he went to the scene of the downtown Greenville shootings. He documented the seven shell casings that had been found.

Jonathan Allen Williams (Williams) testified that he was in downtown Greenville at 2:30 a.m. on 4 November 2001. Williams had gone to the restaurant for food and went outside because there were some girls fighting outside the restaurant. Williams testified that he "heard the shots and ran for the front door." Williams was struck by a bullet in the lower midsection of his left thigh. Williams was not able to identify the shooter, but he did testify that he saw a dark-colored vehicle and puffs of smoke.

Howard Lee Howell (Howell) testified that he was also in downtown Greenville at a nightclub on 4 November 2001. Howell went outside and heard what sounded like a firecracker. Howell was immediately hit in the stomach with a bullet but testified that he was unable to tell from where the shot came.

Brad F. Herring (Herring) testified that he was at the Flying Salsa, a health food restaurant he owned, on 4 November 2001 at 2:30 a.m.

Herring had just ended his practice of keeping the Flying Salsa open until 3:00 a.m. He stayed at the Flying Salsa after closing on 4 November 2001 in order to estimate how much business he was losing by closing earlier. Herring testified that the Flying Salsa "lights were down," but were not turned off because the lights could not be completely turned off. Herring testified that he "heard a sound that sounded like a chain hitting a big metal sheet." On cross-examination, Herring testified that he immediately left the Flying Salsa after hearing the noise. The next morning when he opened the Flying Salsa, Herring found "glass everywhere" and "jackets and slugs from two bullets." Herring further testified that two windows at the Flying Salsa had holes in them.

Defendant presented no evidence.

We note that defendant has failed to present an argument in support of assignments of error numbers one, two, and six, and they are deemed abandoned pursuant to N.C.R. App. P. 28(b)6).

I.

[1] Defendant argues in assignments of error numbers three and four that the trial court erred in denying defendant's motion to dismiss and defendant's motion to set aside the verdict on the charge of discharging a firearm into occupied property. Specifically, defendant argues that the State failed to present evidence that defendant had reasonable grounds to believe that the Flying Salsa might have been occupied. For the reasons stated below, we find this argument has no merit.

"When considering a motion to dismiss on the grounds of insufficiency of the State's evidence, the trial court must determine whether there is substantial evidence of each element of the offense and that defendant committed that offense." *State v. Coleman,* 161 N.C. App. 224, 232, 587 S.E.2d 889, 894 (2003). "Substantial evidence is such relevant evidence as is necessary to persuade a rational juror to accept a conclusion." *State v. Squires,* 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003), *cert. denied,* 541 U.S. 1088, 159 L. Ed. 2d 252 (2004). " 'In determining the sufficiency of the evidence we consider it in the light most favorable to the State.' " *State v. Shaw,* 164 N.C. App. 723, 728, 596 S.E.2d 884, 888, *disc. review denied,* 358 N.C. 737, 602 S.E.2d 676 (2004) (quoting *State v. Lynch,* 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990)).

The crime of discharging a firearm into occupied property has been defined by the North Carolina Supreme Court in the following manner:

> "[A] person is guilty of [discharging a firearm into occupied property] if he intentionally, without legal justification or excuse, discharges a firearm into *an occupied building* with knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons."

*State v. Fletcher*, 125 N.C. App. 505, 512, 481 S.E.2d 418, 423, *disc. review denied*, 346 N.C. 285, 487 S.E.2d 560, *cert. denied*, 522 U.S. 957, 139 L. Ed. 2d 299 (1997) (quoting *State v. Williams*, 284 N.C. 67, 73, 199 S.E.2d 409, 412 (1973)). Although the statute defining this crime, N.C. Gen. Stat. § 14-34.1 (2003), does not contain an express knowledge requirement regarding whether a building is occupied, the North Carolina Supreme Court has interpreted the statute as requiring knowledge. *See State v. James*, 342 N.C. 589, 595-96, 466 S.E.2d 710, 714-15 (1996); *State v. Williams*, 284 N.C. 67, 73, 199 S.E.2d 409, 412 (1973).

In the case before our Court, it is undisputed that two bullets struck the front windows of the Flying Salsa. Several police officers identified defendant as the individual who was standing through the sunroof of a vehicle intentionally firing a weapon in the direction of the crowd and the officers. It is also not disputed that Herring was in the Flying Salsa when the bullets struck the windows. Defendant's only argument is that neither he nor anyone else at the scene knew, or had reason to know, that the Flying Salsa was occupied at the time of the shooting.

There was substantial evidence from which a jury could find that defendant had reasonable grounds to believe that the Flying Salsa was occupied. Prior to this incident, the Flying Salsa had stayed open until 3:00 a.m. Further, it was located in downtown Greenville, an area which Officer Knox described as typically "pretty crowded" at 2:30 a.m. on Sunday mornings. The restaurant and a nightclub were both located in downtown Greenville in close proximity to the Flying Salsa. The fact that the Flying Salsa was located in an area where other establishments were open until the early morning hours shows that it was reasonable to believe that the Flying Salsa was also open and occupied at the time of the shooting. Other evidence tending to support the assertion that defendant should have had reason to

believe the Flying Salsa was occupied was the fact that the Flying Salsa was not completely dark when the shooting occurred. We recognize that Herring testified that the lights could not be turned off completely. Nonetheless, we find it significant that some light was emanating from the Flying Salsa when the shooting occurred. In light of this evidence, we hold there was substantial evidence that defendant had reasonable grounds to believe the Flying Salsa was occupied at the time of the shooting. Accordingly, the trial court did not err in denying defendant's motion to dismiss at the close of the evidence.

"The denial of a motion to set aside the verdict on the basis of insufficient evidence is within the discretion of the trial court and is reviewable on appeal under an abuse of discretion standard." *State v. Fleming*, 350 N.C. 109, 146, 512 S.E.2d 720, 745, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). As discussed above, there was substantial evidence regarding each element of discharging a firearm into occupied property. We thus hold that the trial court did not abuse its discretion in refusing to set aside the verdict on this charge. Accordingly, this argument is overruled.

## II.

Defendant next assigns error to the trial court's finding of four aggravating factors at defendant's sentencing hearing. The trial court found the following statutory aggravating factors: (1) the offense was committed to hinder the lawful exercise of a governmental function or the enforcement of laws; (2) defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person; and (3) defendant committed the offense while on pretrial release on another charge. In addition, the trial court found as a non-statutory aggravating factor that "PURSUANT TO STATE V. JONES, [104 N.C. App. 251, 409 S.E.2d 322 (1991)], . . . DEFENDANT SHOT MORE THAN ONE TIME AND IN MORE THAN ONE OCCUPIED PROPERTY. . . . DEFENDANT MADE REPEATED ACTS WHICH WERE MORE THAN REQUIRED FOR THE OFFENSE."

In his original brief to this Court, defendant argued that the State failed to prove the statutory aggravating factors by a preponderance of the evidence. *See* N.C. Gen. Stat. § 15A-1340.16(a) (2003). Defendant also argued that the trial court erred in finding the non-statutory aggravating factor since the same evidence to establish this aggravating factor was also used to establish the statutory aggravating factors. Defendant subsequently filed a Motion for Appropriate

Relief with this Court, seeking either resentencing in the presumptive range or resentencing in compliance with the United States Constitution and *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). In the alternative, defendant requested an order that the parties submit supplemental briefs on the *Blakely* issue.

Our Court denied defendant's Motion for Appropriate Relief on 12 August 2004, but allowed defendant's Motion for Supplemental Briefing for the limited purpose of addressing defendant's *Blakely* arguments. In his supplemental brief, defendant argues that the trial court erred by finding the factors in aggravation when defendant did not admit to them and a jury did not determine them. In addition, defendant argues that the aggravating factors must have been alleged in an indictment.

**[2]** We first address defendant's argument that the aggravating factors must have been alleged in an indictment. Our Supreme Court recently rejected this argument in *State v. Allen*, 359 N.C. 425, 437-38, —— S.E.2d ——, —— (July 1, 2005). In *Allen*, the Court recognized that language in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), on which *Blakely* is based, indicates that " 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment . . . .' " *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446 (quoting *Jones v. United States*, 526 U.S. 227, 243 n6, 143 L. Ed. 2d 311, 326 n6 (1999)). However, the Court noted that *Blakely* made no reference to the Fifth Amendment indictment guarantee, and instead relied on the Sixth Amendment right to a jury trial. *Allen*, 359 N.C. at 438, —— S.E.2d at ——. The Court then reiterated its holding in *State v. Hunt*, 357 N.C. 257, 582 S.E.2d 593, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702 (2003), wherein it stated that " 'to this date, the United States Supreme Court has not applied the Fifth Amendment indictment requirements to the states.' " *Allen*, 359 N.C. at 438, —— S.E.2d at —— (quoting *Hunt*, 357 N.C. at 273, 582 S.E.2d at 604). The Court then concluded that aggravating factors need not be pled in a state court indictment. *Id.* at 438, —— S.E.2d at ——. Therefore, we hold that it was not error for defendant's aggravating factors not to have been alleged in an indictment.

**[3]** We do, however, find that it was error for the trial court to find the aggravating factors without submitting them to a jury. In *Allen*, our Supreme Court held that

> those portions of N.C. [Gen. Stat.] § 15A-1340.16 which require trial [courts] to consider evidence of aggravating factors not

found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence are unconstitutional.

*Id.* at 433, —— S.E.2d at ——. In this case, the trial court unilaterally found each of the aggravating factors without submitting them to a jury, thus violating *Blakely* and defendant's Sixth Amendment right to a jury trial. *Blakely*, 542 U.S. at ——, 159 L. Ed. 2d at 414-15. We hold that it was error for the trial court to find the aggravating factors in defendant's case.

**[4]** The State argues that defendant waived his right to appellate review of this issue. The State acknowledges that defendant's case was pending on direct appeal at the time *Blakely* was decided. However, the State argues that based on *Ring v. Arizona*, 536 U.S. 584, 609, 153 L. Ed. 2d 556, 577 (2002) (holding that a jury, and not a sentencing judge, must find the aggravating factor that permits the imposition of the death penalty), *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446 (holding that a jury must make the factual determination that authorizes an increase in the maximum prison sentence based on a "hate crime" enhancement), and *State v. Lucas*, 353 N.C. 568, 597, 548 S.E.2d 712, 731 (2001) (applying *Apprendi* to N.C. Gen. Stat. § 15A-1340.16A), defendant was on notice of his rights under *Blakely* and should have raised this argument at the trial court.

Our Supreme Court has directed that *Blakely* and *Allen* "apply to cases . . . 'that are now pending on direct review or are not yet final.' " *Allen*, 359 N.C. at 427, —— S.E.2d at —— (quoting *Lucas*, 353 N.C. at 598, 548 S.E.2d at 732). *Blakely* was decided on 24 June 2004, and *Allen* was decided on 1 July 2005. Since defendant's case was still pending on direct review to this Court at the time *Blakely* and *Allen* were decided, defendant is entitled to raise this argument for the first time before this Court.

**[5]** The State also argues that defendant is not entitled to relief under *Blakely* because defendant stipulated to a fact supporting an aggravating factor. Since the trial court found that each aggravating factor in and of itself outweighed the mitigating factor, the State argues that defendant's stipulation to the single aggravating factor was sufficient to uphold defendant's sentence in the aggravated range.

At trial, the State requested that the trial court find in aggravation that defendant committed the current offense while on pre-trial

release on another charge. The following colloquy occurred at the sentencing hearing:

> [COUNSEL FOR DEFENDANT]: I just want [the trial court] to know that in considering—the other charges, Your Honor, were pending at the time. He was on pre-trial release at the time—
>
> [COUNSEL FOR THE STATE]: So you stipulate that he was out on bond on those five charges?
>
> [COUNSEL FOR DEFENDANT]: Yes. . . .

Defendant argues that the above dialogue is not sufficient to amount to a stipulation under *Blakely*. Defendant argues that in order to effectively stipulate to the existence of an aggravating factor, a trial court must make a specific inquiry of a defendant.

We recognize that *Blakely* and *Allen* state that the maximum sentence a judge may impose is a sentence that is either supported by *"the facts reflected in the jury verdict or admitted by the defendant." Blakely*, 542 U.S. at ——, 159 L. Ed. 2d at 413; *see also Allen*, 359 N.C. at 439, —— S.E.2d at ——. We also note that in order to effectively waive the constitutional right to a jury trial, the waiver "not only must be voluntary but must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756 (1970). At the time of defendant's trial, neither *Blakely* nor *Allen* had been decided; hence, defendant was not aware of his right to have a jury determine the existence of the aggravating factors. Defendant's stipulation to the aggravating factor that he was on pre-trial release at the time the offense was committed was not a "knowing [and] intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748, 25 L. Ed. 2d at 756. We hold that defendant did not knowingly and effectively stipulate to an aggravating factor nor waive his right to a jury trial on the issue of the aggravating factors.

[6] The State finally argues that if any error occurred under *Blakely*, the error was harmless. Our Supreme Court held in *Allen* that "the harmless-error rule does not apply to sentencing errors which violate a defendant's Sixth Amendment right to jury trial pursuant to *Blakely*." *Allen*, 359 N.C. at 449, —— S.E.2d at ——. We accordingly do not review the findings of aggravating factors for harmless error.

STATE v. EVERETTE

[172 N.C. App. 237 (2005)]

**[7]** Since the trial court's determination of the aggravating factors violated defendant's constitutional rights, we remand for resentencing. We note that defendant argues that there is no provision in the North Carolina General Statutes providing for a process by which juries can determine whether aggravating factors exist. Defendant therefore contends that defendant can be resentenced at no greater than the mitigated range, since the trial court correctly found a mitigating factor. However, our Supreme Court stated in *Allen* that the proper procedure when appellate review reveals a *Blakely* error is to simply remand for resentencing. *Allen*, 359 N.C. at 449, —— S.E.2d at ——. Pursuant to the Supreme Court's directive, we remand for resentencing in accordance with this opinion.

III.

**[8]** Although we remand for resentencing, we elect to address defendant's remaining assignment of error in order to provide guidance to the trial court on remand. Defendant assigns as error the trial court's finding that each aggravating factor was independently sufficient to outweigh the single mitigating factor.

At the sentencing hearing, the trial court stated:

I find that each one of the aggravating factors in and of itself independently outweighs all mitigating factors. I find specifically that each one of the aggravating factors independently is in and of itself a sufficient basis for the imposition of the sentence or sentences that are hereinafter imposed and outweighs all mitigating and justifies a sentence from within the aggravated range.

"[A] trial [court's] weighing of mitigating and aggravating factors will not be disturbed absent a showing that the [trial court] abused [its] discretion." *State v. Daniels*, 319 N.C. 452, 454, 355 S.E.2d 136, 137 (1987). We have previously held that a trial court has the discretion to "properly determine that each of several aggravating factors is in and of itself sufficient to outweigh all mitigating factors." *State v. Norman*, 151 N.C. App. 100, 104, 564 S.E.2d 630, 633 (2002). In keeping with our precedent, we find that the trial court did not abuse its discretion by finding that each aggravating factor alone outweighed the mitigating factor in this case.

No error; remanded for resentencing.

Judge TYSON concurs.

Judge TIMMONS-GOODSON concurs in part and dissents in part with a separate opinion.

TIMMONS-GOODSON, Judge, concurring in part and dissenting in part.

I agree with the holding of parts II and III of the majority opinion. However, because I disagree with the holding of part I of the majority opinion, I concur in part and dissent in part.

The evidence presented at trial tends to show that defendant fired a weapon at several law enforcement officers working in a "pretty crowded" area of Greenville at a typically crowded time. Two of defendant's gunshots struck the Flying Salsa, a restaurant which had previously been open, but which was closed at the time of the shooting. In part I of its opinion, the majority determines that the State offered substantial evidence to support a conclusion that defendant had reasonable grounds to believe the restaurant was occupied at the time of the shooting. I disagree.

"The terms 'more than a scintilla of evidence' and 'substantial evidence' are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed[,] . . . even though the suspicion so aroused by the evidence is strong." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (citations omitted). "If the evidence presented is circumstantial, 'the question for the court is whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances.' " *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978) (quoting *State v. Rowland*, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965)).

In the instant case, even when viewed in the light most favorable to the State, I am unable to conclude that the evidence supports a reasonable inference of defendant's guilt. The majority deems it significant that some light was emanating from the Flying Salsa at the time of the shooting, and that the Flying Salsa was located in an area where other establishments were open until the early morning hours. Although I recognize that there was likely some light emanating from the restaurant, I note that Herring testified that the "lights were down" at the Flying Salsa at the time of the shooting, and that he was

unable to completely shut the lights off. Herring also testified that his restaurant was a "new business," and that it was not open at the time of the shooting. Herring stated that "no one came in" to the restaurant after the shooting, and on cross-examination, he recalled that he was about "mid-way back, probably six feet" when he heard the noise from the bullets striking the front of the restaurant.

After reviewing the record in the instant case, I am unable to conclude that a reasonable inference of defendant's guilt may be drawn from the circumstances. Instead, I conclude that evidence tending to show that the Flying Salsa was dimly lit at a time and in an area that is typically crowded creates only a suspicion or conjecture that defendant had reasonable grounds to believe it was occupied. Therefore, because I am not convinced that the State satisfied its burden of demonstrating that defendant had reasonable grounds to believe that the restaurant was occupied at the time of the shooting, I dissent from that portion of the majority opinion holding that the trial court did not err by denying defendant's motion to dismiss.