STATE OF NORTH CAROLINA v. HASEEN HERMAN EVERETTE

No. 452A05

(Filed 9 November 2007)

**1. Firearms and Other Weapons— discharging firearm into occupied property—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss and subsequent motion to set aside the verdict on the charge of discharging a firearm into occupied property in violation of N.C.G.S. § 14-34.1 because, when considered together, the evidence was sufficient to support the jury's inference that defendant had reasonable grounds to believe a restaurant might have been occupied when he fired two shots into the building while the owner was inside.

**2. Sentencing— aggravating factors—pretrial release— *Blakely* error—admission by counsel or defendant—sufficiently definite and certain admission**

The trial court's finding of the pretrial release aggravating factor for the charges of assault with a deadly weapon inflicting serious injury and assault with a firearm on a law enforcement officer did not constitute *Blakely* error and was sufficient to justify the trial court's imposition of aggravated sentences, because: (1) an aggravated sentence imposed solely on the basis of facts "admitted," "stipulated," or "conceded" by a criminal defendant does not implicate the Sixth Amendment right to a trial by jury; (2) defendant admitted through counsel to all of the relevant

STATE v. EVERETTE

[361 N.C. 646 (2007)]

facts necessary for the trial court to make a conclusive finding on this aggravator; (3) defendant's *Blakely*-compliant admission served as the sole basis for the trial court's finding of this aggravator, and defendant was not entitled to a jury trial on this aggravator under *Blakely* and its progeny; (4) a *Blakely*-compliant admission may be made either by defendant personally or through counsel; (5) the sentencing hearing transcript reveals an admission sufficiently clear for *Blakely* purposes; and (6) a new sentencing hearing is unnecessary under *State v. Ahearn*, 307 N.C. 584 (1983), because the trial court expressly indicated during sentencing that each of the aggravators independently justified each of defendant's aggravated sentences and outweighed the lone mitigating factor. Thus, the case is remanded to the Court of Appeals for further remand to the trial court for reinstatement of defendant's sentences.

Justice HUDSON concurring in part and concurring in result in part.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 172 N.C. App. 237, 616 S.E.2d 237 (2005), finding no error in part in judgments entered 20 February 2003 by Judge Jerry R. Tillett in Superior Court, Pitt County, but remanding the case for resentencing. On 19 December 2006, the Supreme Court allowed the state's petition for discretionary review and defendant's petition for discretionary review as to an additional issue. Heard in the Supreme Court 7 May 2007.

*Roy Cooper, Attorney General, by Daniel S. Johnson, Special Deputy Attorney General, for the state-appellee/appellant.*

*Richard E. Jester for defendant-appellant/appellee.*

MARTIN, Justice.

This case represents the most recent chapter in our jurisprudence concerning the finite number of cases to which *Blakely v. Washington*, 542 U.S. 296 (2004), applies, but North Carolina's remedial sentencing legislation does not. We conclude that no error occurred in defendant's trial and that defendant is not entitled to a new sentencing hearing.

STATE v. EVERETTE

[361 N.C. 646 (2007)]

The state's evidence at trial tended to show the following: From 10:30 p.m. on 3 November 2001 until 2:30 a.m. on 4 November 2001, Officer Charles Savage of the Greenville Police Department was working as a security guard at a downtown Greenville store. He was off duty, but was wearing his police uniform at the time. During his shift, Officer Savage repeatedly came across defendant and several young women loitering in the store parking lot, and he told defendant to leave on four occasions.

On his way home after his shift ended, Officer Savage observed several young women fighting in the street in front of BW-3, a restaurant in downtown Greenville. He recognized three of them as having been with defendant earlier in the evening. Officer Savage broke up the fight, and as he dispersed the crowd, he saw defendant standing a couple of feet away from him. Defendant said three times, "F— the police." Officer Savage responded that defendant needed to "shut [his] mouth and disappear or [defendant would be] going to jail."

Around this time, Officer William Holland, Officer Keith Knox, and Sergeant John Curry arrived at the scene to assist Officer Savage. Officer Holland also told defendant to leave. Officer Holland escorted defendant across the street. Defendant walked slowly, looking back several times.

At this time, a black vehicle pulled up and defendant entered the front passenger seat. The vehicle began to depart as Officer Holland walked back across the street. Officer Holland then heard gunshots, turned, and saw defendant "hanging out of the top of the sunroof of that vehicle shooting" in his direction. Officer Knox and Sergeant Curry had witnessed Officer Holland walking defendant across the street, and they too heard gunshots and saw defendant standing up through the sunroof of the vehicle and firing shots. Although Officer Savage did not personally see defendant firing shots, he heard the gunshots and saw smoke in the air. As Officer Holland chased the vehicle on foot, he heard "bullets . . . impacting the wall on the side of [the street]" and the sound of shattering glass. Officer Holland eventually lost sight of the vehicle.

Officer Knox later found seven shell casings at the scene. Of the seven or more shots defendant fired, several resulted in serious injury to persons and property. Jonathan Williams was eating at BW-3 around 2:30 a.m. when he noticed the young women fighting outside the restaurant. He went outside to observe the commotion. Williams then "heard the shots and ran for the front door." He was struck by a

bullet in the lower midsection of his left thigh, a painful injury that necessitated his temporary withdrawal from college and delayed his graduation. Williams was unable to identify the shooter, but saw a dark-colored vehicle and puffs of smoke.

Howard Howell was in downtown Greenville that night performing with a band at a nightclub. Around 2:30 a.m., he left the nightclub and went outside. After hearing what sounded to him like a "firecracker," he was immediately hit by a bullet in the stomach. Howell survived, but endured several months of painful recovery.

Brad Herring was also in downtown Greenville that night at the Flying Salsa, a restaurant he owned. Herring had only recently ended his practice of keeping the Flying Salsa open until 3:00 a.m. and was staying after closing that night to estimate how much business he was losing by closing earlier. At 2:30 a.m., the lights at the Flying Salsa were not turned off, but were instead turned "down." Herring "heard a sound that sounded like a chain hitting a big metal sheet" and immediately left the Flying Salsa. The next morning when he opened the Flying Salsa, Herring found "glass everywhere" and "jackets and slugs from two bullets." He discovered that two of the windows at the Flying Salsa had holes in them.

Defendant presented no evidence at trial, and a jury found him guilty of two counts of assault with a deadly weapon inflicting serious injury, one count of assault with a firearm on a law enforcement officer, and one count of discharging a firearm into occupied property. At sentencing, the trial court found the following statutory aggravating factors as to the two charges of assault with a deadly weapon inflicting serious injury and the charge of assault with a firearm on a law enforcement officer: (1) the offense was committed to hinder the lawful exercise of a governmental function or the enforcement of laws; (2) defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person; and (3) defendant committed the offense while on pretrial release.

The trial court found as a nonstatutory aggravating factor that "defendant made repeated acts which were more than required for the offense." As to the charge of discharging a weapon into occupied property, the trial court also found as a nonstatutory aggravating factor that "defendant shot more than one time into occupied property in a reckless or hazardous manner." The trial court found as a mitigating factor that "defendant supports [his] family." The trial court

sentenced defendant in the aggravated range to four active, consecutive terms of thirty-six to fifty-three months.

Defendant appealed to the Court of Appeals. While his appeal was pending, the United States Supreme Court issued its decision in *Blakely v. Washington,* 542 U.S. 296 (2004), which held that in most instances, aggravating factors increasing a defendant's sentence must be submitted to a jury and proved beyond a reasonable doubt. On defendant's motion, the Court of Appeals ordered the parties to brief the *Blakely* issue. *See State v. Blackwell,* 361 N.C. 41, 44, 638 S.E.2d 452, 454-55 (2006) (applying *Blakely* to the defendant's case when it was on direct appeal at the time *Blakely* was issued), cert. denied, —— U.S. ——, 127 S. Ct. 2281 (2007). A divided panel of the Court of Appeals found no error in defendant's convictions, but found structural error in defendant's sentences and remanded for resentencing in accordance with *State v. Allen,* 359 N.C. 425, 615 S.E.2d 256 (2005), *withdrawn,* 360 N.C. 569, 635 S.E.2d 899 (2006). *State v. Everette,* 172 N.C. App. 237, 616 S.E.2d 237 (2005). The dissenting judge concluded that the evidence was insufficient to support defendant's conviction for discharging a firearm into occupied property, but concurred with the majority in all other respects. *Id.* at 248-49, 616 S.E.2d at 244-45.

Defendant appealed to this Court on the basis of the dissenting opinion. We subsequently allowed the state's petition for discretionary review of the *Blakely* issue. We also allowed defendant's petition for discretionary review of the additional issue as to whether defendant was entitled to a new sentencing hearing to allow the trial court to reweigh the aggravating and mitigating factors. We now address these issues in turn.

**[1]** Defendant first argues that the trial court erred by denying his motion to dismiss and subsequent motion to set aside the verdict on the charge of discharging a firearm into occupied property in violation of N.C.G.S. § 14-34.1. At the time of defendant's offenses, this section stated: "Any person who willfully or wantonly discharges or attempts to discharge . . . [a] firearm into any building . . . while it is occupied is guilty of a Class E felony." N.C.G.S. § 14-34.1 (2001) (amended 2005). To support a conviction under this statute, the defendant must have had " 'reasonable grounds to believe that the building might be occupied by one or more persons.' " *State v. James,* 342 N.C. 589, 596, 466 S.E.2d 710, 714-15 (1996) (quoting *State v. Williams,* 284 N.C. 67, 73, 199 S.E.2d 409, 412 (1973)). Defendant argues that the state failed to present sufficient evidence that he had

reasonable grounds to believe that the Flying Salsa might be occupied when he fired into the building.

It is well settled that "[i]n ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the crime and whether the defendant is the perpetrator of that crime." *State v. Harris*, 361 N.C. 400, 402, 646 S.E.2d 526, 528 (2007) (citing *State v. McNeil*, 359 N.C. 800, 803, 617 S.E.2d 271, 273 (2005)). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* (citing *McNeil*, 359 N.C. at 804, 617 S.E.2d at 274). "When reviewing claims of sufficiency of the evidence, an appellate court must . . . view[] all the evidence in the light most favorable to the State and resolv[e] all contradictions and discrepancies in the State's favor." *Id.* (citing *State v. Jones*, 303 N.C. 500, 504-05, 279 S.E.2d 835, 838 (1981)). Thus, "[a] case should be submitted to a jury if there is any evidence tending to prove the fact in issue or reasonably leading to the jury's conclusion 'as a fairly logical and legitimate deduction.'" 361 N.C. at 402-03, 646 S.E.2d at 528 (quoting *Jones*, 303 N.C. at 504, 279 S.E.2d at 838) (citations and internal quotation marks omitted). This is true "even though the evidence may support reasonable inferences of the defendant's innocence." *State v. Grigsby*, 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000) (citations and internal quotation marks omitted).

Here, at the time of the shooting, the lights in the Flying Salsa were on but turned "down," such that a jury could infer that a dim light was emanating from inside. The Flying Salsa was located in an area of downtown Greenville described as "pretty crowded" at 2:30 a.m. on Sunday mornings. On that night in particular, the streets surrounding the Flying Salsa were crowded. Moreover, the Flying Salsa was located in an area where other nearby establishments, including BW-3 and a nightclub, were open until the early morning hours. Before this incident, the Flying Salsa had stayed open until 3:00 a.m.

When considered together, this evidence was sufficient to support the jury's inference that defendant had reasonable grounds to believe the Flying Salsa might have been occupied when he fired two shots into the building while Herring was inside. Accordingly, the Court of Appeals correctly held that the trial court properly denied defendant's motion to dismiss for insufficient evidence. For the same reasons, the Court of Appeals correctly held that the trial court properly exercised its discretion in denying defendant's motion to set aside the verdict on the basis of insufficient evidence. *See State v.*

STATE v. EVERETTE

[361 N.C. 646 (2007)]

*Fleming,* 350 N.C. 109, 146, 512 S.E.2d 720, 745 (citing *State v. Wilson,* 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985)) (holding that the trial court's denial of a motion to set aside the verdict for insufficient evidence is reviewable only for abuse of discretion), *cert. denied,* 528 U.S. 941 (1999).

**[2]** The majority of defendant's remaining arguments concern his contention that *Blakely* error occurred when the trial court found aggravating factors without submitting them to a jury. In its brief to this Court, the state concedes that the trial court's·finding of all but one of these aggravators constituted *Blakely* error. It argues, however, as it did before the Court of Appeals, that the trial court's finding that defendant was on pretrial release at the time he committed the instant offenses comported with *Blakely* because defendant admitted to the existence of this aggravating factor.

During the sentencing hearing, the state represented that it would seek a finding that defendant was on pretrial release at the time he committed the instant crimes. The state indicated to the trial court that it was prepared to offer proof of this aggravator in the form of public records, but that it would accept defendant's stipulation to this aggravator in the alternative. Confronted with the state's proffer of overwhelming evidence of this aggravator, defendant's counsel stipulated to its existence:

> [PROSECUTOR]: ... And finally, No. 12, Your Honor, the defendant committed the offense while on pre-trial release on another charge. . . . To show the Court that, I will hand up 01-CRS-58888, in which the defendant was arrested on September 15th of 2001 for the [sale] of cocaine in which he made bond and was released from the detention center on October 18th of 2001.
>
> . . . .
>
> [PROSECUTOR]: And also, Your Honor, another series of charges, four counts of assault with a deadly weapon with the intent to kill in 01-CRS-56481 through 56484, in which the defendant was arrested on those charges on May 26th of 2001 and was released on bond on June 17th of 2001. I point out the condition of that bond was that he not possess any dangerous or deadly weapons. I'd like to hand those files up. Your Honor, unless the defendant is willing to stipulate to those, I think the Court needs to look at the files.
>
> . . . .

STATE v. EVERETTE

[361 N.C. 646 (2007)]

THE COURT: He was under the conditions of pre-trial release at the time.

[DEFENSE COUNSEL]: I just want you to know that in considering—the other charges, Your Honor, were pending at the time. He was on pre-trial release at the time—

[PROSECUTOR]: So you stipulate that he was out on bond on those five charges?

[DEFENSE COUNSEL]: Yes.

Having stipulated to the existence of the aggravator during his sentencing hearing, defendant now argues on appeal that *Blakely* error in fact occurred.

Defendant first argues that his stipulation did not constitute a valid waiver of his *Blakely* rights because it was not "knowing and voluntary" as he alleges is required under *Brady v. United States*, 397 U.S. 742, 748 (1970). This argument is premised on defendant's assertion that, at the time of his stipulation, he did not fully contemplate that *Blakely* would subsequently provide for the right to a jury trial on this aggravator.

Put simply, defendant's argument overlooks the fact that he did not have a *Blakely* right to waive. *Blakely* itself specifically excluded several categories of aggravated sentences from the scope of the right it contemporaneously recognized: (1) those imposed on the basis of "a prior conviction," 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)); (2) those imposed "solely on the basis of the facts reflected in the jury verdict," *id.* at 303 (emphasis omitted); and (3) those imposed "solely on the basis of the facts . . . admitted by the defendant," *id.* (emphasis omitted), or to which the defendant "stipulates," 542 U.S. at 310. Notably, the precise wording *Blakely* used to describe its textual exceptions has survived verbatim in subsequent articulations of this right. *See Rita v. United States*, —— U.S. ——, ——, 127 S. Ct. 2456, 2466 (2007); *Cunningham v. California*, —— U.S. ——, ——, 127 S. Ct. 856, 860 (2007); *Washington v. Recuenco*, —— U.S. ——, ——, 126 S. Ct. 2546, 2549 (2006); *United States v. Booker*, 543 U.S. 220, 244 (2005). Most recently, the United States Supreme Court in *Rita v. United States* reaffirmed *Blakely's* textual exceptions, explaining that "[t]he Sixth Amendment question, the Court has said, is whether the law forbids a judge to increase a defendant's sentence unless the judge finds facts that the jury did not

find (and the offender did not *concede*)." —— U.S. at ——, 127 S. Ct. at 2466 (third emphasis added, first and second emphases omitted).

Thus, the United States Supreme Court's post-*Blakely* jurisprudence has clarified that an aggravated sentence imposed solely on the basis of facts "admitted," "stipulated," or "conceded" by a criminal defendant does not implicate the Sixth Amendment right to a trial by jury. We recognized this exception to *Blakely* in *State v. Hurt*, 361 N.C. 325, 329, 643 S.E.2d 915, 917 (2007), in which we held that *Blakely* allows a trial judge to "impose an aggravated sentence on the basis of admissions made by a defendant." Similarly, the United States Court of Appeals for the Fourth Circuit in *United States v. Revels* noted: "However a defendant admits to facts, they may serve once admitted as the basis for an increased sentence without being proved to a jury beyond a reasonable doubt." 455 F.3d 448, 450 (4th Cir.) (citing *Booker*, 543 U.S. at 244), *cert. denied*, —— U.S. ——, 127 S. Ct. 299 (2006).

In the instant case, this textual exception to *Blakely* applies whether the exchange between the trial court and counsel during sentencing is viewed as defendant's "admission," "stipulation" (the parties' choice of terminology at trial), or "concession" to the existence of the now-challenged aggravator. The aggravator at issue here concerned the objective question of whether "[t]he defendant committed the offense while on pretrial release on another charge" under N.C.G.S. § 15A-1340.16(d)(12). As the transcript confirms, defendant admitted through counsel to all of the relevant facts necessary for the trial court to make a conclusive finding on this aggravator: namely, that defendant "was on pre-trial release at the time" he committed the instant offenses.[1] Consequently, defendant's *Blakely*-compliant admission served as the sole basis for the trial court's finding of this aggravator, and defendant was not entitled to a jury trial on this aggravator under *Blakely* and its progeny. For that reason, defendant's discussion of whether he could have contemplated the United States Supreme Court's decision in *Blakely* is of no consequence. Indeed, a defendant may not waive that which he does not have.

---

1. We observe, however, that a *Blakely*-compliant admission to an aggravator requiring a subjective, fact-intensive analysis will seldom, if ever, exist. *See, e.g., Hurt*, 361 N.C. at 326-27, 643 S.E.2d at 916 (concluding that defendant's arguments in mitigation did not constitute an admission that the offense was especially heinous, atrocious, or cruel under N.C.G.S. § 15A-1340.16(d)(7)). This is because a finding of such an aggravator requires a subjective assessment by the factfinder such that the sentence cannot be viewed as having been imposed "solely on the basis of" admitted facts or stipulations. *See Blakely*, 542 U.S. at 303 (emphasis omitted).

Accordingly, we reverse the Court of Appeals as to those portions of its opinion holding otherwise.

Defendant next argues in the alternative that his admission through counsel did not constitute a *Blakely*-compliant "admission," "stipulation," or "concession" because he did not personally admit to the existence of the challenged aggravator. We recently considered this argument in *Hurt*. There the defendant argued that because "he did not personally admit to any aggravating factor in the case," the representations of defense counsel alone could not constitute an admission for *Blakely* purposes. *Hurt*, 361 N.C. at 329, 643 S.E.2d at 918. We rejected this argument and made abundantly clear that a *Blakely*-compliant admission may be made either by the "defendant personally *or through counsel*." *Id.* at 330, 643 S.E.2d at 918 (emphasis added). In doing so, we reaffirmed our pre-*Blakely* cases holding that a trial court may find aggravating factors based on an admission by the defendant's counsel on behalf of the defendant. *See, e.g., State v. Swimm*, 316 N.C. 24, 32, 340 S.E.2d 65, 71 (1986).

The federal courts have also rejected the notion that a *Blakely*-compliant admission requires a personal admission by the defendant. Citing federal decisions holding that defense counsel's representations alone constitute admissions for *Blakely* purposes, the United States Court of Appeals for the Fourth Circuit in *Revels* explained:

> Admissions may take a variety of forms, including guilty pleas and stipulations, a defendant's own statements in open court, <u>and representations by counsel</u>, *see, e.g., United States v. Devono*, 413 F.3d 804, 805 (8th Cir. 2005) (per curiam); *United States v. Bartram*, 407 F.3d 307, 310-11 (4th Cir. 2005) (opinion of Widener, J.); *id.* at 315 (Niemeyer, J., concurring in part and concurring in the judgment), [*cert. denied*, 546 U.S. 1189 (2006)]. However a defendant admits to facts, they may serve once admitted as the basis for an increased sentence without being proved to a jury beyond a reasonable doubt.

455 F.3d at 450 (emphasis added) (internal citations omitted).

Against the weight of this authority, defendant points to provisions in North Carolina's Blakely Act which now require the trial court to address defendants personally, advise them that they are entitled to a jury trial on any aggravating factors, and ensure that an admission is the result of an informed choice. *See* N.C.G.S. § 15A-1022.1(b), (c) (2005). In defendant's words, "[t]he

legislature carefully crafted a statutory scheme to comply with *Blakely*," and the failure to apply these provisions to defendant would "make the statute an exercise in futility."

This argument, however, defies the Blakely Act's express language, which makes clear that N.C.G.S. § 15A-1022.1 does not apply to defendant's case. *See* Act of June 21, 2005, ch. 145, 2005 N.C. Sess. Laws 253 (codified at N.C.G.S. §§ 15A-924(a), -1022.1, -1340.14, -1340.16 (2005)) (providing that "[p]rosecutions for offenses committed before [30 June 2005] are not abated or affected by [the Blakely Act]," *id.*, sec. 5 at 260). The remedial measures our legislature enacted in the wake of *Blakely* remain in full force when applicable, but we summarily reject defendant's suggestion that we should retroactively engraft these statutory protections onto the federal *Blakely* right under the guise of constitutional interpretation. Accordingly, for those cases arising prior to the effective date of the Blakely Act, we reaffirm our prior cases and follow the federal courts in holding that defense counsel's admissions to the existence of an aggravating factor constitute *Blakely*-compliant admissions upon which an aggravated sentence may be imposed. *See Hurt*, 361 N.C. at 330, 643 S.E.2d at 918; *see also, e.g., Revels*, 455 F.3d at 450.

Defendant next argues that his admission was not sufficiently "definite and certain," as *Hurt* suggests is required for stipulations in the *Blakely* context. *See Hurt*, 361 N.C. at 329, 643 S.E.2d at 918 (quoting *State v. Powell*, 254 N.C. 231, 234-35, 118 S.E.2d 617, 619-20 (1961), *superseded by statute on other grounds*, N.C.G.S. § 20-179(a) (2003)). In *Hurt*, the transcript revealed that "at most, defendant's attorney was acknowledging that the aggravating factors might apply as he asked the trial court not to accept the State's argument." *Id.* at 330, 643 S.E.2d at 918. We therefore held that the mere acknowledgment that an aggravator *might* apply was not sufficiently definite and certain to constitute an admission for *Blakely* purposes, but cautioned that such admissions "may take a variety of forms." *Id.*

*Revels* also addressed this issue, observing that "verbalizations necessarily fall along a spectrum" by which their certainty and clarity should be considered as potential *Blakely* admissions. 455 F.3d at 450. There the Court cited its decision in *United States v. Milam* for the proposition that the "silence" of both defendant and defense counsel would not constitute an admission for *Blakely* purposes. *Revels*, 455 F.3d at 450-51 (citing *Milam*, 443 F.3d 382, 387 (4th Cir. 2006) (holding that no *Blakely*-compliant admission occurred when both the defendant and defense counsel "stood silent" as the trial

court made its finding on the aggravator)). The Court observed, however, that unequivocal "statements such as 'I admit,' or the functional equivalent thereof" are "clearly admissions under [*Blakely*]." *Id.* at 450.

In the present case, the sentencing hearing transcript reveals an admission sufficiently clear for *Blakely* purposes. The transcript confirms that defense counsel admitted to the existence of the pretrial release aggravator ("[T]he other charges . . . were pending[.]"), then rephrased this admission for clarity ("He was on pre-trial release at the time."). In response, the prosecutor sought to clarify defendant's admission ("So you stipulate that he was out on bond on those five charges?"), and defense counsel again admitted to the existence of the pretrial release aggravator ("Yes."). The clarity of this admission is entirely opposite to the ambiguous remarks of defense counsel in *Hurt* and the complete silence of both defendant and defense counsel considered in *Milam* and referenced in *Revels*. Compare *Hurt*, 361 N.C. at 329, 643 S.E.2d at 918-19, *and Revels*, 455 F.3d at 450-51 (citing *Milam*, 443 F.3d at 387), *with Devono*, 413 F.3d at 805 (holding that defendant admitted to the challenged aggravator when defense counsel stated at sentencing, "We didn't object to the factual basis in the Presentence Report because frankly we believed that the facts are true that are set forth in there."), *and Bartram*, 407 F.3d at 310 n.1, 314 (holding that no *Blakely* error occurred when trial court found aggravating factors based on defense counsel's concession that defendant committed the "relevant conduct as stated in [a] presentence report"). Accordingly, defendant's argument that his admission was not sufficiently clear for purposes of *Blakely* is without merit.

Finally, defendant argues that he is entitled to a new sentencing hearing under *State v. Ahearn*, 307 N.C. 584, 300 S.E.2d 689 (1983). Because we hold that the trial court properly found the pretrial release aggravator, and because the state concedes that the trial court's finding of the other aggravators constituted *Blakely* error, we address defendant's argument that the trial court must be given an opportunity to reweigh the pretrial release aggravator against the lone mitigating factor it found.

Defendant is not entitled to a new sentencing hearing under these circumstances. In *Ahearn*, the trial court found three aggravating factors and five mitigating factors, and determined that the aggravating factors outweighed the mitigating factors. 307 N.C. at 592, 300 S.E.2d at 694. On appeal, this Court concluded that one of the aggravating

factors was not supported by the evidence. *Id.* at 599, 300 S.E.2d at 698. The record, however, gave no indication of the weight the trial court accorded each aggravator and mitigator. In addition, the trial court completed only one judgment and commitment form for defendant's two offenses, the practical result of which "treat[ed] both offenses alike for purposes of listing the findings in aggravation and mitigation." *Id.* at 592, 300 S.E.2d at 694. For these reasons, we remanded for resentencing rather than "attempt[ing] to second guess the sentencing judge with respect to the weight given to any particular factor." *Id.* at 602, 300 S.E.2d at 701. We observed, however, that a trial court "may properly determine that one factor in aggravation outweighs more than one factor in mitigation" without any need to "justify the weight [it] attaches to any factor." *Id.* at 596-97, 300 S.E.2d at 697.

Consistent with *Ahearn*, a new sentencing hearing here is unnecessary because the trial court expressly indicated during sentencing that each of the aggravators—including the pretrial release aggravator—independently justified each of defendant's aggravated sentences and outweighed the lone mitigating factor. At the sentencing hearing, the trial court stated:

I find that each one of the aggravating factors in and of itself independently outweighs all mitigating factors. I find specifically that each one of the aggravating factors independently is in and of itself a sufficient basis for the imposition of the sentence or sentences that are hereinafter imposed and outweighs all mitigating and justifies a sentence from within the aggravated range.

In addition, the trial court completed individual judgment and commitment forms specifying the relevant aggravators and mitigator for each conviction. These forms specifically indicated that "each and every aggravated factor in and of itself outweighs all the mitigating factors and justifies from within the aggravated range this sentence." Thus, the trial court here eliminated the need for any appellate "second guessing" as to the weight it accorded each factor on each sentence, and it properly exercised discretion in "determin[ing] that one factor in aggravation outweigh[ed] more than one factor in mitigation." *Ahearn*, 307 N.C. at 597, 300 S.E.2d at 697; *see also State v. Daniels*, 319 N.C. 452, 454, 355 S.E.2d 136, 137 (1987) (holding that "a trial [court's] weighing of mitigating and aggravating factors will not be disturbed absent a showing that the [trial court] abused [its] discretion"). Accordingly, defendant's argument fails.

STATE v. EVERETTE

[361 N.C. 646 (2007)]

To summarize, we conclude that: (1) sufficient evidence existed to support defendant's conviction for discharging a firearm into occupied property in violation of N.C.G.S. § 14-34.1; (2) the trial court's finding of the pretrial release aggravator did not constitute *Blakely* error; (3) the finding of this pretrial release aggravator was sufficient to justify the trial court's imposition of aggravated sentences; and (4) defendant is not entitled to a new sentencing hearing. We therefore affirm in part and reverse in part and remand to the Court of Appeals for further remand to the trial court for reinstatement of defendant's sentences.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.

Justice HUDSON concurring in part and concurring in result in part.

I agree with the majority's analysis of the sufficiency of the evidence issue and with its conclusion that the trial court has discretion to weigh each aggravator separately against the mitigating factors. However, I do not believe that defense counsel's stipulation that defendant was on pretrial release at the time of the offense was an adequate admission under *Blakely*. However, because of the stipulation, I conclude that the *Blakely* error is harmless beyond a reasonable doubt. Thus, I concur in the result on this issue.

The State concedes *Blakely* error as to three of the four sentencing factors. The State argues that as to the fourth, that defendant was on pretrial release at the time of these offenses, defendant "admitted" the facts. The majority agrees and affirms defendant's sentence on that basis.

It is undisputed that the trial court found all of the aggravating factors without submitting them to a jury. The State argued before the Court of Appeals, as it does here, that defendant is not entitled to relief under *Blakely* because defendant admitted the underlying facts supporting the aggravating factor. The State points for support to the following colloquy:

[DEFENSE COUNSEL]: I just want you to know that in considering— the other charges, Your Honor, were pending at the time. He was on pre-trial release at the time—

**STATE v. EVERETTE**

[361 N.C. 646 (2007)]

[ASSISTANT DISTRICT ATTORNEY]: So you stipulate that he was out on bond on those five charges?

[DEFENSE COUNSEL]: Yes.

The trial court found as an aggravating factor that defendant committed the offense while on pretrial release on another charge. The Court of Appeals held that defendant did not effectively admit or stipulate to this aggravating factor so as to except it from the Sixth Amendment protection of *Blakely*.

I am not persuaded that any federal court, Fourth Circuit or elsewhere, has held that defense counsel's stipulation to a fact, in the absence of any indication of defendant's personal agreement or even awareness of same, qualifies as an admission for *Blakely or Booker* purposes. *See United States v. Booker*, 543 U.S. 220, 160 L. Ed. 2d 621 (2005) (applying *Blakely* to federal sentencing guidelines). Indeed, my research has found no case in which any federal court has so held when, as here, defendant neither pleaded guilty, personally addressed the court, nor conferred with counsel about the stipulated fact. In *United States v. Revels*, the Fourth Circuit recently described the analysis it applied in order to decide if facts were "admitted" by the defendant:

> In assessing whether a defendant has made an admission for *Booker* purposes, verbalizations necessarily fall along a spectrum. On one end of the spectrum are statements such as "I admit," or the functional equivalent thereof. These are clearly admissions under *Booker*. *See, e.g., United States v. Morrisette*, 429 F.3d 318, 323 (1st Cir. 2005) (defendant admitted facts where, inter alia, he and his counsel "both conceded the accuracy of the prosecution's recitation of the facts relevant to the offense"); *Devono*, 413 F.3d at 805 (defendant admitted facts where, *inter alia*, defense counsel stated " 'we believe[] that the facts [in the PSR] are true' "). On the other end of the spectrum is silence. *In United States v. Milam*, 443 F.3d 382, 2006 U.S. App. LEXIS 8310, *13, No. 04-4224, slip op. at 8 (4th Cir. Apr. 6, 2006), we held that a defendant's failure to object to facts in his PSR did not constitute a *Booker* admission. In *Milam*, the defendant "stood silent when the court adopted the finding" that enhanced his sentence, and we explained that "to presume, infer, or deem a fact admitted because the defendant has remained silent . . . is contrary to the Sixth Amendment." *Id.*

455 F.3d 448, 450-51 (4th Cir.), *cert. denied,* —— U.S. ——, 127 S. Ct. 299, 166 L. Ed. 2d 226 (2006). The majority here refers to the "complete silence of both defendant and defense counsel mentioned in *Revels*" as supporting the application of that case. My reading of *Revels* does not reveal silence by defendant or counsel. To the contrary, in its opinion, the Fourth Circuit noted that "Revels testified that he had read the PSR [pre-sentencing report] and discussed it with his lawyer." *Id.* at 449. Thereafter, the judge asked defendant directly if he had objections to anything contained in or left out of the report, and he responded, "No, sir." *Id.* at 450. Even so, the court in *Revels* found Sixth Amendment error, but ultimately deemed it harmless. The Fourth Circuit recently reaffirmed the importance of assessing admissions on the *Revels* spectrum for *Booker* (and thus *Blakely*) purposes. *United States v. Britt,* 216 F. App'x 317, 321 (4th Cir. 2007) (unpublished) (holding that the statement of defense counsel that all objections to a pre-sentencing report had been "resolved" was not an admission for *Booker* purposes because it requires the court to draw inferences about "facts admitted by the defendant").

On the *Revels* spectrum, this case appears closer to *Milam* than to *Morrisette* in that here, the defendant personally said nothing, and the record does not show that he discussed the aggravating factor with his attorney. The court in *Revels* noted that " 'to presume, infer, or deem a fact admitted because the defendant has remained silent . . . is contrary to the Sixth Amendment.' " 455 F.3d at 451 (quoting *United States v. Milam,* 443 F.3d at 387). Thus, I conclude that as in *Milam* and *Revels*, there was Sixth Amendment error.

Nor is the majority's conclusion here compelled by this Court's recent decision in *State v. Hurt,* 361 N.C. 325, 643 S.E.2d 915 (2007). In *Hurt*, we held that comments by counsel in his argument during defendant's sentencing hearing were not binding on the defendant as an admission of an aggravating factor for *Blakely* purposes. *Id.* at 330, 643 S.E.2d at 918. There, we acknowledged that admissions through counsel can have binding effect in certain circumstances. Although there may be circumstances in which counsel may bind the defendant to a stipulated fact as an admission for *Blakely* purposes, this record is not clear enough for me to agree that it does so here.

As noted above, the State concedes *Blakely* error on three of the four aggravating factors. Because I do not agree that on this record counsel's stipulation coupled with defendant's silence constituted an admission of the fourth factor, I would find *Blakely* error on all four

aggravating factors. However, because the stipulation establishes a basis for the aggravating factor at issue here, I conclude that the error is harmless beyond a reasonable doubt. Thus, I would affirm defendant's convictions and his sentence.